**JACOB HOFFMAN BREWING CO. v. McELLIGOTT, Deputy Internal Revenue Collector, et al. CLAUSEN-FLANAGAN BREWERY v. SAME. RUPPERT v. SAME.**

(Circuit Court of Appeals, Second Circuit. June 28, 1919.)

1. INJUNCTION ⬤75—INTERNAL REVENUE COLLECTOR—WAR-TIME PROHIBITION.

Where the Internal Revenue Department refused to license or sell revenue stamps to concerns which it claimed were violating the War-Time Prohibition Act of November 21, 1918, but this refusal was later abandoned, *held* that an acting deputy collector may be enjoined from reverting to the original practice of the department.

2. UNITED STATES ⬤125—SUITS AGAINST.

The United States may not be sued except with its consent.

3. INDICTMENT AND INFORMATION ⬤28—FEDERAL COURTS.

A criminal suit in the federal courts must be brought in the name of the United States and by the United States attorney.

4. UNITED STATES ⬤125—SUITS AGAINST.

A suit to enjoin a United States attorney from instituting criminal proceedings under a federal statute is a suit against the United States, which cannot be maintained unless property rights are threatened with irreparable damage, and the statute is either unconstitutional or the attorney is transcending his authority under a valid statute.

5. INTOXICATING LIQUORS ⬤134—WAR-TIME PROHIBITION ACT—CONSTRUCTION.

The War-Time Prohibition Act of November 21, 1918, prevents only the manufacture and sale of beer, wine, etc., which is in fact intoxicating.

6. INJUNCTION ⬤105(1)—CRIMINAL PROCEEDINGS—WAR-TIME PROHIBITION ACT.

A federal district attorney cannot be enjoined from instituting criminal proceedings under the War-Time Prohibition Act of November 21, 1918, against concerns manufacturing and selling nonintoxicating beer, upon the ground that the attorney had transcended his authority by invoking the act against nonintoxicating liquors.

Rogers and Hough, Circuit Judges, dissenting in part.

Three suits, by the Jacob Hoffman Brewing Company, by the Clausen-Flanagan Brewery, and by Jacob Ruppert, a corporation, respectively, against Richard J. McElligott, Acting and Deputy Collector of Internal Revenue, and Francis G. Caffey, United States Attorney for the Southern District of New York. From orders granting preliminary injunctions (259 Fed. 321), the defendants appeal. Affirmed as modified.

Francis G. Caffey, U. S. Atty., of New York City (William C. Fitts, Vincent H. Rothwell, and Cornelius J. Smyth, all of New York City, of counsel), for appellants.

Root, Clark, Buckner & Howland, of New York City (Elihu Root and William D. Guthrie, both of New York City, of counsel), for appellee Jacob Hoffman Brewing Co.

Guggenheimer, Untermyer & Marshall, of New York City (Elihu Root and William D. Guthrie, both of New York City, of counsel), for appellee Clausen-Flanagan Brewery.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Fitch & Grant, of New York City (Elihu Root and William D. Guthrie, both of New York City, of counsel), for appellee Jacob Ruppert.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. These three cases involve the same question, and in each the appeal is from an order of the District Court of the United States for the Southern District of New York restraining, pending final hearing, the defendant McElligott, Acting and Deputy Collector of Internal Revenue of the Third District of New York, from refusing to issue licenses to the complainants as brewers of beer, or to issue revenue stamps in respect to their beer, provided they pay or duly tender the taxes required by law, and restraining the defendant Caffey, United States Attorney for the Southern District of New York, from arresting or prosecuting the complainants, their officers, agents, servants, etc., or from enforcing forfeiture of their property for failure to affix revenue stamps to their barrels of beer when such failure is due to the refusal of the defendant McElligott to issue the same, and from enforcing the pains and penalties of the act of November 21, 1918, c. 212, 40 Stat. 1046, by arresting or prosecuting the complainants, their officers, agents, etc.

The complainants are brewers of beer made from malt with an alcoholic content not exceeding 2.75 per cent. by weight, and the rights of the parties in connection with the orders appealed from depend upon the act of Congress of November 21, 1918, the relevant portions of which are:

"That after June 30, 1919, until the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, for the purpose of conserving the man power of the nation, and to increase efficiency in the production of arms, munitions, ships, food, and clothing for the army and navy, it shall be unlawful to sell for beverage purposes any distilled spirits, and during said time no distilled spirits held in bond shall be removed therefrom for beverage purposes except for export. After May 1, 1919, until the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, no grains, cereals, fruit, or other food product shall be used in the manufacture or production of beer, wine, or other intoxicating malt or vinous liquor for beverage purposes. After June 30, 1919, until the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, no beer, wine, or other intoxicating malt or vinous liquor shall be sold for beverage purposes except for export. The Commissioner of Internal Revenue is hereby authorized and directed to prescribe rules and regulations subject to the approval of the Secretary of the Treasury, in regard to the manufacture and sale of distilled spirits and removal of distilled spirits held in bond after June 30, 1919, until this act shall cease to operate, for other than beverage purposes; also in regard to the manufacture, sale, and distribution of wine for sacramental, medicinal, or other than beverage uses. After the approval of this act no distilled, malt, vinous, or other intoxicating liquors shall be imported into the United States during the continuance of the present war and period of demobilization: Provided, that this provision against importation shall not apply to shipments en route to the United States at the time of the passage of this act.

"Any person who violates any of the foregoing provisions shall be punished by imprisonment not exceeding one year, or by fine not exceeding $1,000, or by both such imprisonment and fine.  *  *  *"

[1] Originally the Internal Revenue Department took the position that after May 1, 1919, it would not license brewers who manufactured beer with an alcoholic content equaling or exceeding one-half of 1 per cent. by volume, nor sell the revenue stamps to be affixed to barrels of such beer; but afterwards, by advice of the Attorney-General, this position was abandoned, and the department consented to license brewers and to sell them revenue stamps, even if their beer did contain an alcoholic content equaling or exceeding one-half of 1 per cent. by volume. Accordingly the complainants are not now subject to any forfeiture or penalty under the internal revenue acts if they pay the taxes required by law. The only risk they are exposed to if they continue to brew beer of an alcoholic content not exceeding 2.75 per cent. by weight is that of imprisonment for not more than one year, or a fine not exceeding $1,000, or both, if such manufacture be found to be a violation of the act of November 21, 1918. Nevertheless the injunction against the acting deputy collector, defendant, can do no harm, and, in view of the position originally taken by the Internal Revenue Department, it may go against him.

In this case we have not to inquire whether an administrative board is acting without or beyond its jurisdiction (Gegiow v. Uhl, 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114), or to deal with any attack upon or interference with the complainants' property (United States v. Lee, 106 U. S. 196, 1 Sup. Ct. 240, 27 L. Ed. 171), or of confiscation of it, as in the Rate Cases.

[2-4] It is perfectly well settled that the United States may not be sued, except upon its own consent. Such consent it has given by various statutes which do not apply to the case under consideration. There is no difference between the states and the United States in respect to this immunity from suit. It is an attribute of every sovereign, recognized by all sovereigns. A criminal suit in the federal courts must be brought in the name of the United States, and can only be brought by the United States attorney. Confiscation Cases, 7 Wall 454, 457, 19 L. Ed. 196. A suit in equity to enjoin the United States attorney from instituting criminal proceedings under a statute of the United States is manifestly a suit against the United States. In such a case the United States is sued as effectively as if it were a defendant by name. There is, however, a well-recognized exception to the rule, viz. if property rights are invaded, and the statute in question is unconstitutional, it is void, is to be treated as nonexistent, and so no defense to the United States attorney. When instituting criminal proceedings under it he is to be regarded not as representing the United States in his official capacity, but as acting individually. So if, under a valid statute, he threatens to proceed in a manner injurious to complainant's property rights, and not authorized by the statute, he transcends his authority, does not represent the United States, is not protected by the statute, and may be enjoined. Irreparable injury alone is not enough. Both these conditions must exist. Obviously

in such cases the constitutionality of the statute, or the question whether the United States attorney has transcended his authority, must be determined by the court before it can determine whether the particular suit is or is not against the United States. Mr. Justice Peckham said in Ex parte Young, 209 U. S. 123, 159, 28 Sup. Ct. 441, 453 (52 L. Ed. 714, 13 L. R. A. [N. S.] 932, 14 Ann. Cas. 764):

"It is also argued that the only proceeding which the Attorney General could take to enforce the statute, so far as his office is concerned, was one by mandamus, which would be commenced by the state in its sovereign and governmental character, and that the right to bring such action is a necessary attribute of a sovereign government. It is contended that the complainants do not complain and they care nothing about any action which Mr. Young might take or bring as an ordinary individual, but that he was complained of as an officer to whose discretion is confided the use of the name of the state of Minnesota so far as litigation is concerned, and that when or how he shall use it is a matter resting in his discretion, and cannot be controlled by any court.

"The answer to all this is the same as made in every case where an official claims to be acting under the authority of the state. The act to be enforced is alleged to be unconstitutional, and, if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting by the use of the name of the state to enforce a legislative enactment which is void because unconstitutional. If the act which the state Attorney General seeks to enforce be a violation of the federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character, and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States. See In re Ayers, supra [123 U. S.] p. 507 [8 Sup. Ct. 164, 31 L. Ed. 216]. It would be an injury to complainant to harass it with a multiplicity of suits or litigation generally in an endeavor to enforce penalties under an unconstitutional enactment, and to prevent it ought to be within the jurisdiction of a court of equity. If the question of unconstitutionality with reference, at least, to the federal Constitution, be first raised in a federal court, that court, as we think is shown by the authorities cited hereafter, has the right to decide it, to the exclusion of all other courts."

The act of November 21, 1918, is a war measure, constitutional as such, and by its express terms is to continue in force until a time which has not yet been reached, i. e., the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States. Until such time it is the duty of the United States attorney, defendant, under section 771, United States Revised Statutes (Comp. St. § 1296), to prosecute all delinquents for crimes and offenses covered by it.

The sole ground upon which the United States attorney, defendant in this case, is charged with transcending his authority is that he erroneously construes the statute in connection with the complainant's product, viz. as prohibiting the use of food products in the manufacture of any beer for beverage purposes after May 1, 1919, and the sale of such beer after June 30, 1919; whereas, the act, properly construed, prohibits only the manufacture and sale of such beer as is intoxicating, which the complainants' beer, containing not more than 2.75 per cent. of alcohol by weight, is not.

[5, 6] Although we concur in the construction of the statute by the court below, and assume that the United States attorney will institute criminal proceedings, we do not think the court had power to stay him by injunction from doing so. The proper place for determining whether such criminal proceedings are maintainable is not in a court of equity, but upon an indictment tried in a criminal court before a jury. For any error then committed there will be an adequate remedy by writ of error. We recognize the importance of the interests at stake; that the complainants and others in like case, if not content to manufacture beer containing an alcoholic content not equaling or exceeding one-half of 1 per cent. by volume, must choose between discontinuing their business or carrying it on at the risk of punishment under the act of November 21, 1918, if they continue after May 1, 1919, to manufacture, and after June 30, 1919, to sell, beer containing not more than 2.75 per cent. of alcohol by weight. The question, however, is not one of convenience or of discretion, but of the power of the court; and we think such an extension of judicial power, to meet what seems to be a hard case, to the domain of the executive department and of the courts of common law, would be an injury to our system of jurisprudence still more serious.

This precise question was decided in accordance with these views by the Circuit Court of Appeals for the Sixth Circuit in Arbuckle v. Blackburn, 113 Fed. 616, 51 C. C. A. 122, 65 L. R. A. 864. Judge Day, who as Justice Day wrote the opinion in the Hammer Case, 247 U. S. 251, 38 Sup. Ct. 529, 62 L. Ed. 1101, Ann. Cas. 1918E, 724, greatly relied upon by the complainants, and to be presently considered, said:

"We are now dealing with an officer of a state proceeding under a valid law of the state, and whose error lies in wrongfully construing the statute so as to include the complainant's product. To entertain the bill in this aspect would be to subvert the administration of the criminal law, and deny the right of trial by jury, by substituting a court of equity to inquire into the commission of offenses where it would have no jurisdiction to punish the parties if found guilty. It would be the extension of equity jurisdiction to cases where prosecutions in state courts by the state officers are sought to be enjoined, with a view to determining whether they shall be allowed to proceed under valid statutes in the courts of law. We think this an enlargement of the jurisdiction opposed to reason and authority. It is claimed, however, that conceding that a court of equity cannot enjoin the prosecution of criminal offenses, as a general thing, the rule is different when property rights are involved; and we are cited to cases holding that equity has jurisdiction to enjoin acts likely to be destructive of property rights, although the acts complained of constitute infractions of the criminal law. This is quite a different proposition from enjoining criminal proceedings alleged to be indirectly destructive of property rights. Many criminal prosecutions may affect the property of the person accused. A property may be greatly injured by the wrongful and unfounded charge that it is used for immoral purposes. Such prosecution may destroy its rental value and prevent its sale, yet a court of equity could not usurp the right of trial which both the state and the accused have in a common-law court before a jury. Every citizen must submit to such accusations, if lawfully made, looking to the vindication of an acquittal and such remedies as the law affords for the recovery of damages. It is often a great hardship to be wrongfully accused of crime, but it is one of the hardships which may result in the execution of the law, against which courts of equity are powerless to relieve. Suess v. Noble (C. C.) 31 Fed. 855; Hemsley v. Myers (C. C.) 45

259 F.—34

Fed. 283; Kramer v. Board, 53 N. Y. Super. Ct. 492; Food Co. v. McNeal, 1 Ohio, N. P. 266."

District Judge Grubb in Central Consumers Co. v. Austin, 238 Fed. 616, arrived at the same conclusion. It is said that these cases are inconsistent with the decision in Ex parte Young, supra. In that case the defendant Young, Attorney General of Minnesota, had been enjoined by the Circuit Court of the United States from enforcing an act of the state of Minnesota fixing the charges for freight transportation at rates found to be confiscatory. After this order was entered in the federal court the Attorney General, in direct defiance of it, applied to a state court for a writ of mandamus compelling the railroad company to comply with certain provisions of the state act. For this he was adjudged by the Circuit Court to be in contempt, and put in custody of the United States marshal. Thereupon he applied to the Supreme Court for leave to file a petition for writs of habeas corpus and certiorari, which the court denied. The act was held to be unconstitutional because, among other reasons, it had been found by the lower court to be confiscatory of the railroad company's property. The general rule that courts of equity have no jurisdiction to enjoin criminal proceedings was fully recognized, but the injunction was sustained because of certain exceptions to the general rule within which that case fell. Mr. Justice Peckham said, at page 161 of 209 U. S., at page 454 of 28 Sup. Ct. (52 L. Ed. 714, 13 L. R. A. [N. S.] 932, 14 Ann. Cas. 764):

"It is further objected (and the objection really forms part of the contention that the state cannot be sued) that a court of equity has no jurisdiction to enjoin criminal proceedings, by indictment or otherwise, under the state law. This, as a general rule, is true. But there are exceptions. When such indictment or proceeding is brought to enforce an alleged unconstitutional statute, which is the subject-matter of inquiry in a suit already pending in a federal court, the latter court, having first obtained jurisdiction over the subject-matter, has the right, in both civil and criminal cases, to hold and maintain such jurisdiction, to the exclusion of all other courts, until its duty is fully performed. Prout v. Starr, 188 U. S. 537, 544 [23 Sup. Ct. 398, 47 L. Ed. 584]. But the federal court cannot, of course, interfere in a case where the proceedings were already pending in a state court. Taylor v. Taintor, 16 Wall. 366, 370 [21 L. Ed. 287]; Harkrader v. Wadley, 172 U. S. 148 [19 Sup. Ct. 119, 43 L. Ed. 399].

"Where one commences a criminal proceeding who is already party to a suit then pending in a court of equity, if the criminal proceedings are brought to enforce the same right that is in issue before that court, the latter may enjoin such criminal proceedings. Davis, etc., Co. v. Los Angeles, 189 U. S. 207 [23 Sup. Ct. 498, 47 L. Ed. 778]. In Debbins v. Los Angeles, 195 U. S. 223–241 [25 Sup. Ct. 18, 49 L. Ed. 169], it is remarked by Mr. Justice Day, in delivering the opinion of the court, that 'it is well settled that where property rights will be destroyed, unlawful interference by criminal proceedings under a void law or ordinance may be reached and controlled by a court of equity.' Smyth v. Ames [169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819], supra, distinctly enjoined the proceedings in indictment to compel obedience to the rate act.

"These cases show that a court of equity is not always precluded from granting an injunction to stay proceedings in criminal cases, and we have no doubt the principle applies in a case such as the present. In re Sawyer, 124 U. S. 200, 211 [8 Sup. Ct. 482, 31 L. Ed. 402], is not to the contrary. That case holds that in general a court of equity has no jurisdiction of a bill to stay criminal proceedings, but it expressly states an exception, 'unless they are instituted by a party to the suit already pending before it and to try the same right that

is in issue there.' Various authorities are cited to sustain the exception. The criminal proceedings here that could be commenced by the state authorities would be under the statutes relating to passenger or freight rates, and their validity is the very question involved in the suit in the United States Circuit Court. The right to restrain proceedings by mandamus is based upon the same foundation and governed by the same principles."

The case under consideration does not fall within any of these exceptions. See, also, Davis v. Los Angeles, 189 U. S. 207, 23 Sup. Ct. 498, 47 L. Ed. 778.

Only two cases are referred to in which United States attorneys have been enjoined, and the complainants rely upon them as showing that this question of jurisdiction was disregarded. Wilson v. New, 243 U. S. 332, 37 Sup. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024, and Hammer v. Dagenhard, 247 U. S. 251, 38 Sup. Ct. 529, 62 L. Ed. 1101, Ann. Cas. 1918E, 724. In them, as in the case under consideration, only injunctive relief was prayed for. The moment that relief was granted or denied the suit was at an end. The only difference is that, the decree in the two cases cited being final, an appeal lay directly to the Supreme Court (section 238, Judicial Code, Act March 3, 1911, c. 231, 36 Stat. 1157 [Comp. St. § 1215]), whereas in this case, the order being interlocutory, appeal lay only to the Circuit Court of Appeals (section 129, Judicial Code [Comp. St. § 1121]). It is said that because the Supreme Court disposed of the two cases cited it actually exercised the jurisdiction which the complainants deny the court in this suit has. Jurisdiction as a federal court is plain in all three cases, but this does not prove that a suit against the United States can be maintained either by consent of the parties or of the court or by oversight of either or both. The right to maintain the suits, i. e., to give the injunctive relief prayed for, could not be determined until the court had ascertained whether they fell within the general rule or within the exception. In Wilson v. New the moment the court found the act constitutional, from proceeding under which the United States attorney had been enjoined, the suit was necessarily found to be one against the United States, and the injunction improper, without any reference to the property rights involved. So in Hammer v. Dagenhard, the moment the statute was found to be unconstitutional, and the complainant's right to employment directly invaded by its enforcement, the suit was necessarily found not to be against the United States, and the injunction was proper within the well-established exception. The decisions in these cases do not impair the general rule as to suits against the United States, or extend the exception to that rule. The whole attention of the court was directed to the vital question of constitutionality, and the fact that it did not restate well-established law does not convince us that it intended to depart therefrom.

We are sure that the United States attorney will co-operate with the complainants to have the question involved determined as speedily, and in the meantime with as little interference with their business, as possible.

Because the suit, so far as the defendant Caffey, United States attorney, is concerned, is against the United States, and there is no

direct injury to the complainants' property rights, and the act of Congress under which it is charged he is threatening to proceed is constitutional, and in so proceeding he will not transcend his authority under the act, the order of the court below is modified by striking out the injunction pendente lite against him, and as so modified is affirmed.

ROGERS, Circuit Judge (dissenting in part). I concur in the foregoing opinion in so far as it holds that the injunction cannot issue to restrain the United States attorney from instituting criminal prosecutions under the acts of Congress approved August 10, 1917, c. 53, 40 Stat. 276 (Comp. St. 1918, §§ 3115⅛e to 3115⅛r), and November 21, 1918. The importance of this case to the government and to the complainants, and the fundamental principle which is involved and which goes to the jurisdiction of the equity courts, makes it my duty to state the reasons upon which my conclusion is based.

The learned District Judge has rendered an opinion in which he has denied a motion to dismiss the bill of complainant, and a preliminary injunction has accordingly been issued restraining the United States attorney and the acting and deputy collector of internal revenue of the Third district of New York from enforcing, pending final hearing, certain acts of Congress. It seems to me that the rulings made are contrary to the powers of a court of equity, and are due to a misapprehension of certain decisions of the Supreme Court of the United States.

The court of chancery was founded on the inefficiency of the ordinary tribunals to do complete justice in civil matters. Almost at the same time and for a like reason the court of star chamber was established, and both had their origin in the royal prerogative. The star chamber grew out of the failure of the ordinary tribunals to do complete justice in criminal matters and other offenses of an extraordinary and dangerous character, and its jurisdiction was confined to cases partaking of a criminal character. Select Essays in Anglo-American Legal History, vol. 2, pp. 251, 252. We accordingly find it laid down with unanimity by the text-writers that criminal proceedings are not enjoined in equity.

In Pomeroy's Equity Jurisprudence (sec. 1361, p. 396, note) that distinguished authority states that "criminal proceedings will never be enjoined"; citing Kerr v. Corporation of Preston, L. R. 6 Ch. Div. 463; Saule v. Browne, Id. 10 Ch. Div. 64; Portis v. Fall, 34 Ark. 375; Phillips v. Stone Mt., 61 Ga. 386. This accords with the general principle that when a cause belongs to the jurisdiction of the law courts equity will never interfere to restrain the prosecution of the action nor to stay proceedings on the judgment or execution upon mere legal grounds.

In Bispham's Equity (8th Ed., § 424) it is laid down that "proceedings in criminal courts will not be interfered with by injunction unless the proceedings are commenced by a person who is also plaintiff in equity relative to the same matter." The author notes no other exception. The exception to which he refers comes under the right of

the equity court to control the conduct of parties who seek its aid in furtherance of their civil rights. The defendant in the bill and in the criminal proceeding must be the same person, and the question raised and the object sought in the two proceedings must be identical.

In Maitland's Equity (page 261) that distinguished legal scholar says:

"A civil court, again, must not prohibit a man from instituting criminal proceedings."

In Story's Equity Jurisprudence (section 893) the law is stated as follows:

"There are, however, cases in which courts of equity will not exercise any jurisdiction by way of injunction to stay proceedings at law. In the first place, they will not interfere to stay proceedings in any criminal matters or in any cases not strictly of a civil nature. As, for instance, they will not grant an injunction to stay proceedings on a mandamus, or an indictment, or an information, or a writ of prohibition. But this restriction applies only to cases where the parties, seeking redress by such proceedings, are not the plaintiffs in equity; for, if they are, the court possesses power to restrain them personally from proceeding, at the same time upon the same matter of right, for redress in the form of a civil suit and of a criminal prosecution. In such cases the injunction is merely incidental to the ordinary power of the court to impose terms upon parties who seek its aid in furtherance of their rights."

In Eden on Injunctions, 66, it is said:

"It is an established rule that an injunction, or any order in the nature of an injunction, will not be granted to restrain proceedings in a criminal matter."

In Kerr on Injunctions (4th Ed. p. 7), the leading English authority on the subject, it is said:

"The court will not interfere by injunction in matters merely criminal or immoral, which do not affect any right to property. But if an act which is criminal touches also the enjoyment of property, the court has jurisdiction, but its interference is founded solely on the ground of injury to property."

In High on Injunctions (section 68, 4th Ed.) it is laid down that—

"since courts of equity deal only with civil and property rights, they will not interfere by injunction with criminal proceedings, having no jurisdiction or power to afford relief in such cases. Jurisdiction over such actions is conferred upon courts especially created to hear them, and, with few exceptions, it is beyond the power of equity to control or in any manner interfere with such proceedings by injunction."

And the exceptions he refers to do not include a case like the present. He goes on to say:

"So equity will not interfere by injunction to restrain municipal officers from the prosecution of suits for the violation of city ordinances, such proceedings being of a quasi-criminal nature, since equity will not interfere with the execution of the criminal law, whether pertaining to the state at large or to municipalities which are agents in the administration of civil governments."

In Spelling on Injunctions (2d Ed., vol. 2, § 24) it is said:

"Equity has no jurisdiction to interpose for the prevention of crime, or to enforce moral obligations, nor will it interfere for the prevention of illegal acts, merely because they are illegal. Nor have the courts of equity jurisdis-

tion to prevent by injunction the institution of bona fide prosecutions for criminal offenses, whether the same be violations of state statutes or municipal ordinances."

Lord Chief Justice Holt, of the Queen's Bench, said in the case of Holderstaffe v. Saunders, 6 Mod. 16 (1703), when counsel suggested that an injunction be sought in chancery, that—

"Surely chancery will not grant an injunction in a criminal matter under examination in this court; and that, if they did, this court would break it, and protect any that would proceed in contempt of it."

In 1742, in the Mayor and Corporation of York, 2 Atkins, 302, the plaintiffs claimed the sole right of fishing in the River Ouse; the defendants claimed the same right, and a bill and cross-bill were brought to establish their several rights. While these suits were pending the plaintiffs caused the agents of the defendant to be indicted at the York sessions, where they themselves were judges, for a breach of the peace, in fishing in their liberty. An application for an injunction was made to the Lord Chancellor (Hardwicke).

"This court," said the chancellor, "has not originally and strictly any restraining power over criminal prosecutions. * * * If actions of trespass had been brought vi et armis this court would have stopped them; but though I cannot grant an injunction, yet I may certainly make an order upon the prosecutors to prevent the proceeding on the indictment. * * * Where parties submit their right to the court, they have certainly a jurisdiction and may interpose."

In 1751, in Montague v. Dudman, 2 Ves., Sr., 396, Lord Chancellor Hardwicke said:

"This court has no jurisdiction to stay proceedings on a mandamus, nor to an indictment, nor to any information, nor to a writ of prohibition, that I know of."

In 1827, in Macaulay v. Shackell, 1 Bligh's New R. 96, 127, Lord Eldon declared that "a court of equity has no criminal jurisdiction."

In 1876, in Kerr v. Corporation of Preston, supra, which involved an attempt to restrain certain criminal proceedings, Jessel, M. R., said:

"Why ought a court of equity to interfere with the ordinary proceedings of a criminal court? I am not aware that any such power exists. The point came before me in Saul v. Browne, L. R. 10 Ch. 64, where I declined to interfere with criminal proceedings or to follow Lord Hardwicke's doubtful decision in Mayor of York v. Pilkington, 2 Atk. 302. My decision was appealed from, and the Lords Justices thought it a right decision. With the exception of that case before Lord Hardwicke, there is no instance in which a court of equity has interfered in criminal proceedings. I do not say that the court might not interfere in a possible case, but as a general rule it will not."

In Wharton's Criminal Procedure (10th Ed., vol. 3, p. 2134) it is said:

"Court of equity has no jurisdiction to stay or enjoin criminal proceedings."

In 16 Am. & Eng. Encyc. of Law, p. 363, it is laid down:

"A court of equity has no criminal jurisdiction, and cannot interfere to prevent the commission of criminal or illegal acts, unless there is some interference, actual or threatened, with property or rights of a pecuniary nature; but when there is such interference, and there is no adequate remedy

at law, the fact that the act may be criminal will not divest the jurisdiction of equity to prevent it."

I may stop here to say that an illustration of what is meant by the passage quoted may be found in In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092. In that case, decided in 1894, Mr. Justice Brewer, speaking for the court, said:

"A chancellor has no criminal jurisdiction. Something more than the threatened commission of an offense against the laws of the land is necessary to call into exercise the injunctive powers of the court. There must be some interferences, actual or threatened, with property or rights of a pecuniary nature; but when such interferences appear the jurisdiction of a court of equity arises, and is not destroyed by the fact that they are accompanied by or are themselves violations of the criminal law."

The court sustained the right to punish Debs for his violation of the injunction, the injunction having been issued for the protection of property. The acts which Debs committed in violating the injunction the court said might or might not have been violations of the criminal law. "If they were, that matter is for inquiry in other proceedings."

In citing the English decisions above referred to I am mindful that the Supreme Court has more than once declared that the equity jurisdiction of the courts of the United States is the same in nature and extent as the equity jurisdiction of England, from which it is derived. Dodge v. Woolsey, 18 How. 331, 347, 15 L. Ed. 401; Fenn v. Holme, 21 How. 481, 16 L. Ed. 198; Thompson v. Railroad Companies, 6 Wall. 134, 18 L. Ed. 765; Van Norden v. Morton, 99 U. S. 378, 380, 25 L. Ed. 453; Root v. Railroad Co., 105 U. S. 189, 26 L. Ed. 975.

There are many decisions in the courts of this country in which the general rule has been applied that in general the equity courts are without jurisdiction to restrain criminal proceedings. In Attorney General v. Utica Ins. Co., 2 Johns. Ch. 371, Chancellor Kent said:

"If a charge be of a criminal nature, or an offense against the public, and does not touch the enjoyment of property, it ought not to be brought within the direct jurisdiction of this court, which was intended to deal only in matters of civil right, resting on equity, or where the remedy at law was not sufficiently adequate."

The citations might be extended indefinitely, but enough has been said to show that the statements of the text-writers are abundantly sustained by the decisions of the courts as to what is the general rule as to the right to an injunction to restrain criminal proceedings.

I come now to inquire under what circumstances the Supreme Court has recognized a right to restrain criminal proceedings by injunction.

The question was before the court in 1887 in In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402. I shall not go into the facts that were before the court in that case, except to say that a bill was filed praying an injunction to restrain the mayor and council of a city from removing a city officer for malfeasance in office. The lower court granted the injunction, and committed the defendants for contempt in disregarding it. The Supreme Court held the injunction

absolutely void, and that the order committing defendants for contempt was also void, and that defendants were entitled to their discharge on habeas corpus. In the opinion, written by Mr. Justice Gray, it is said in referring to the jurisdiction of equity:

"It has no jurisdiction over the prosecution, the punishment, or the pardon of crimes or misdemeanors, or over the appointment and removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government."

And it is also said:

"From long before the Declaration of Independence it has been settled in England that a bill to stay criminal proceedings is not within the jurisdiction of the court of chancery, whether those proceedings are by indictment or by summary process."

Again it is said:

"The modern decisions in England, by eminent equity judges, concur in holding that a court of chancery has no power to restrain criminal proceedings, unless they are instituted by a party to a suit already pending before it, and to try the same right that is in issue there."

In 1898, in Fitts v. McGhee, 172 U. S. 516, 19 Sup. Ct. 269, 43 L. Ed. 535, the subject was before the court again, a suit having been brought to restrain the Governor of Alabama, the Attorney General of the state, and the solicitor of the Eleventh judicial circuit of the state, from instituting or prosecuting any indictment or criminal proceeding against any one for violating the provisions of an act of the Legislature of Alabama, prescribing certain maximum rates of toll. The court below, the cause having been discontinued as against the governor, whose term of office had expired, issued a temporary injunction on the ground that the act was unconstitutional and void, as being in violation of the Constitution of the United States. The court, in an opinion written by Mr. Justice Harlan, referred approvingly to what was held in Re Sawyer, supra. And in referring to the fact that the toll-gatherers in the plaintiff's service had been indicted in a state court for violating the provisions of the act, the court said:

"Let them appear to the indictment and defend themselves upon the ground that the state statute is repugnant to the Constitution of the United States. The state court is competent to determine the question thus raised, and is under a duty to enforce the mandates of the supreme law of the land. * * * That the defendants may be frequently indicted constitutes no reason why a federal court of equity should assume to interfere with the ordinary course of criminal procedure in a state court."

The next case I will refer to is that of Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, decided in 1908. This was an application for leave to file a petition for writs of habeas corpus and certiorari in behalf of the Attorney General of the state of Minnesota. The lower court had restrained the Attorney General from taking any steps to put in force the orders of the railroad commission of the state, and certain

acts passed by the Legislature of the state fixing rates, and which subjected to criminal proceedings those who violated the provisions of the acts and the orders of the commission. It was claimed that the acts were unconstitutional as being confiscatory. The Attorney General had violated the injunction, was proceeded against for contempt, and was in the custody of the United States marshal. The Supreme Court held the acts unconstitutional. So that the court had before it (1) an unconstitutional act, (2) which act was the subject of inquiry in a suit already pending in a federal court, and (3) the intention of the state's Attorney General to enforce it. And it was held that under these circumstances the injunction was properly issued. But the case of In re Sawyer, supra, was neither overruled nor doubted. In the opinion, written by Justice Peckham, the court, referring to the rule that a court of equity has no jurisdiction to enjoin criminal proceedings, by indictment or otherwise, said:

"But there are exceptions. When such indictment or proceeding is brought to enforce an alleged unconstitutional statute, which is the subject-matter of inquiry in a suit already pending in a federal court, the latter court, having first obtained jurisdiction over the subject-matter, has the right, in both civil and criminal cases, to hold and maintain such jurisdiction, to the exclusion of all other courts, until its duty is fully performed."

The court also pointed out that an injunction might issue to prevent unlawful interference by criminal proceedings under a void law or ordinance, where otherwise property rights would be destroyed. The case is considered consistent with In re Sawyer, supra, which the court expressly declared "is not to the contrary."

I concur with what is said in the opinion of the court that the case now under consideration does not fall within the exceptions stated in Ex parte Young.

No cases have come under my notice in which the Supreme Court has added to the exceptions stated in the case last cited.

In 1916 the court decided Wilson v. New, 243 U. S. 332, 37 Sup. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024. The suit was brought to restrain the officers of certain labor unions and a United States District Attorney from establishing an eight-hour day for interstate and foreign commerce. The act provided that any person violating it should, upon conviction, be fined not less than $100 and not more than $1,000, or imprisoned not to exceed one year, or both. The court held the act constitutional, and reversed the court below, which had granted an injunction. The case turned upon the constitutionality of the act, and there is no decision of the question as to the power of a court of equity to enjoin criminal proceedings, and no reason for supposing that the court intended it to be understood that the jurisdiction of equity in such cases was to be extended beyond the limits stated in Ex parte Young.

In 1918 Hammer v. Dagenhart, 247 U. S. 251, 38 Sup. Ct. 529, 6 L. Ed. 1101, Ann. Cas. 1918E, 724, was decided. The court below had enjoined the enforcement of an act of Congress intended to prevent interstate commerce in the products of child labor. The act provided for a criminal prosecution of those violating its provisions.

The only question discussed in the opinion was that of the constitutionality of the statute, and, as the court held that unconstitutional, it affirmed the lower court, which enjoined its enforcement. The case added nothing to what was said in Ex parte Young upon the subject now under consideration. It was a case where property rights would have been destroyed by criminal proceedings under a void law, and therefore within the exceptions stated in Justice Peckham's opinion in the Young Case.

In Truax v. Raich, 239 U. S. 33, 36 Sup. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283, the act was unconstitutional and the Attorney General was restrained.

In Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570, the statute being constitutional, the bill to enjoin enforcement was dismissed.

Does the fact that the prosecuting officer misconstrues a constitutional statute justify a court of equity in issuing an injunction to restrain him? I am not aware that the Supreme Court has so held. In the absence of such a ruling I think the doctrine announced by the Circuit Court of Appeals in the Sixth Circuit should be followed. It was there said in Arbuckle v. Blackburn, 113 Fed. 623, 51 C. C. A. 129, 65 L. R. A. 864, that the jurisdiction of courts of equity had never been carried to that extent in authoritative decisions. "On the contrary," said Judge Day (afterwards Justice Day of the Supreme Court), "the Supreme Court, in more than one instance, has denied such jurisdiction." And he adds: "We think this an enlargement of the jurisdiction opposed to reason and authority." This opinion was concurred in by Judge Lurton, who also later became a member of the Supreme Court of the United States.

I concur also in the objection that to enjoin the United States attorney from proceeding under a constitutional statute is to enjoin the United States. As was said in Harkrader v. Wadley, 172 U. S. 148, 160, 170, 19 Sup. Ct. 119, 127 (43 L. Ed. 399): "In proceeding by indictment to enforce a criminal statute the state can only act by officers or attorneys, and to enjoin the latter is to enjoin the state." If the law officer of the government attempts to enforce an unconstitutional law, he is in that attempt not representing the state, and is to that extent denied his official or representative character.

In the opinion of Judge WARD, which is the opinion of the majority of the court, the injunction is allowed to stand as against the acting and deputy collector of internal revenue. In that conclusion I am unable to concur.

The bill of complaint was originally filed, not against the collector of internal revenue of the Third district, but against Mark Eisner, who at the time of the filing of the bill occupied that office. Thereafter Mr. Eisner resigned, and upon motion the defendant McElligott was made a party to the suit, he having succeeded to the office as acting and deputy collector of internal revenue. The bill is against McElligott, describing him as acting and deputy collector of internal revenue, and the injunction runs against "the said defendant McElligott." It is not necessary to inquire what the effect would be in case McElligott

should cease to hold the office he now fills, and whether the words "acting and deputy collector of internal revenue" are anything more than a descriptio personæ, identifying the person intended to be bound, and not effective as against another who might succeed to the office upon his death or resignation. See Dillon on Municipal Corporations, vol. 4 (5th Ed.) § 1536.

The injunction restrains McElligott, his agents, servants, subordinates, and employés,

"pending final hearing and decision of this cause, and until the further order of this court, from refusing to issue to said complainant, its agents, officers, servants, and employés, or any of them, revenue stamps in respect of such beer or malt liquor, provided the taxes payable thereon by law are duly tendered or paid to him or them, and from at any time hereafter refusing to license and to permit said complainant duly to qualify as a brewer of said beer or malt liquor, if otherwise duly qualified, even though the beer or malt liquor manufactured, produced, and sold by it, or intended so to be, contain more than one-half of one per cent. of alcohol by volume, so long as it shall contain, when disposed of for consumption, not to exceed two and three-quarters per cent. (2¾ p. c.) of alcohol by weight."

The injunction also restrains him from—

"seizing, attempting or causing to be seized, or otherwise interfering with the property, business, and affairs of said complainant for or on account of any such violations of the provisions of said act of Congress of November 21, 1918, or said proclamation of the President, or said regulations, upon the ground or claim that beer or malt liquor containing not to exceed two and three-quarters per cent. (2¾ p. c.) of alcohol by weight is as matter of fact intoxicating, and that the manufacture, production, and sale of such beer or malt liquor is prohibited by the act of Congress of November 21, 1918, or by the proclamation of the President heretofore issued under and by virtue of said act of Congress of August 10, 1917, or by the regulations of the Commissioner of Internal Revenue."

McElligott is subject to the orders of the Commissioner of Internal Revenue. That official in an affidavit states that he is acting, and will continue to act, in the matters herein involved, "in conformity with the advice of the Department of Justice." He states:

"That heretofore, believing that he could not properly sell stamps for tax payments on beer illegally manufactured, and that his so doing might be construed as an act on the part of the government sanctioning an illegal act, he instructed the collector of internal revenue for the Third district of New York, and the collectors of internal revenue at Philadelphia, Pa., Syracuse, N. Y., and Newark, N. J., to refuse to sell such stamps when the beer had been manufactured subsequent to December 1, 1918. But being now advised by the Department of Justice that if such beer is actually manufactured the manufacturer is liable for the tax whether the manufacture be lawful or unlawful, although in the latter event such manufacturer will be subject to prosecution for a violation of the acts above mentioned, he has canceled said instructions, and directed said collectors to sell the stamps in order that the tax in question may be paid. And this course he intends to pursue unless it shall be decided by the courts that the same is improper.

"That this affiant, acting under advice from the Department of Justice, has instructed the collector of internal revenue for the Third district of New York, N. Y., and the collectors of internal revenue at Philadelphia, Pa., Syracuse, N. Y., and Newark, N. J., not to take the seizures of beer or seizures of any property of brewers because of violations of the provisions of the Food Control Act of August 10, 1917, or regulations issued thereunder, or for violations of the act of November 21, 1918. That this affiant is advised and be-

lieves that the powers of seizures of beer or of the property of brewers be exercised by collectors of internal revenues only for violations or evasions of statutes relating to the payment and collection of taxes upon the manufacture and sale of beer, and that such powers of seizure do not exist because of violations of the Food Control Act of August 10, 1917, or the act of November 21, 1918, or regulations issued by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury under either of the two above-named acts."

He also states in an affidavit:

"That deponent is advised and believes, and, unless otherwise directed by the court, will act and require collectors of internal revenue to act upon the assumption that the sole penalties for such violations of section 15 of the Food Control Act of August 10, 1917, or of the rules and regulations made pursuant thereto, or of the act of November 21, 1918, are fines and imprisonments prescribed by those acts; that the penalties of seizures and forfeitures of property prescribed by the Internal Revenue Laws do not accrue because of such violations, but accrue only because of failures to comply with the Internal Revenue Laws themselves, which govern the payment and collection of taxes."

It appears that acting under instructions from the Commissioner of Internal Revenue, issued on April 11th, and revoked on or about April 21st, McElligott refused to sell internal revenue stamps to the brewers. In relation to that matter McElligott states in his affidavit:

"After the revocation of such instructions I never required such affidavit, and never refused or threatened to refuse to sell internal revenue stamps to be placed on beer or barrels of beer, and have been at all times and still am ready and willing to sell the brewers all such stamps as they may wish to purchase."

He also states:

"Affiant further says that while he held the office of collector of internal revenue of the Third district of New York, as aforesaid, he never did at any time make any threat or threats with respect to or in any manner or form as alleged in paragraph XI of the bill of complaint, or in any way or manner with respect to the matters or things therein alleged."

In view of these affidavits, I find no justification for the issuance of an injunction against McElligott. The intention to do the prohibited acts is not shown to exist, but is expressly shown not to exist.

In Real Estate Trust Co. v. Hatton, 194 Pa. 449, 45 Atl. 379, it was held that where the defendant, by answer and in open court, disclaimed any intention of doing the acts sought to be enjoined, a preliminary injunction should be denied, but that the bill would be retained, with leave to the plaintiff to apply for an injunction if the defendant disregarded his avowed intention.

Under the circumstances existing in this case, and in view of the fact that the defendant McElligott is a responsible official of the government, who disclaims any intention of doing the acts he is alleged to intend to commit, I am of the opinion that the bill should be dismissed as to him, as well as to the United States attorney, but for a different reason. As I understand, the law courts do not grant injunctions to allay fears and apprehensions without evidence that there are sufficient reasons for the fears and apprehensions which are alleged to be entertained. It must be made to appear to the court that the acts

against which protection is asked are not only threatened, but will in all probability be committed to the injury of the complainant, who must show reasonable ground for apprehending that it will otherwise be done. 16 Am. & Eng. Encyc. 361. It is well to remember that there is no power the exercise of which is, in the opinion of the Supreme Court, more delicate than the issuing of an injunction. It is the strong arm of equity, which ought never to be extended, except in a clear case. Truly v. Wanzer, 5 How. 142, 12 L. Ed. 88.

In view of the conclusion reached that the bill should be dismissed as to the United States attorney, it is not necessary to pass upon the question as to the construction to be given to the act of Congress approved November 21, 1918. The statute provides:

"After May 1, 1919, until the conclusion of the present war, and thereafter, until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, no grains, cereals, fruit, or other food product shall be used in the manufacture or production of beer, wine, or other intoxicating malt or vinous liquor for beverage purposes. After June 30, 1919, until the conclusion of the present war, and thereafter until termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, no beer, wine, or other intoxicating malt or vinous liquor shall be sold for beverage purposes except for export."

As, however, it is desired that the judges express their opinion as to the meaning of the words, "no beer, wine or other intoxicating malt or vinous liquor," I state my opinion. It is that the rule of construction known as ejusdem generis applies. Where general words follow the enumeration of a particular class of things, the general words will be construed as applicable to things of the same class as that enumerated. The paramount duty of a court is to see that no effect shall be given to any law which violates the Constitution. After that the next duty is to see that effect is given to the legislative intent. I am unable to see any escape from the conclusion that Congress in enacting the law had in mind intoxicating liquors. In that conclusion I agree with my Associates.

Whether beer containing not more than 2.75 per cent. of alcohol is intoxicating is not a question of law, but one of fact, and will be determined at the final hearing upon the merits.

The acts of Congress now under consideration contain no definition of what per cent. of alcohol makes liquor intoxicating. In a number of the states the statutes prohibit the use of all "alcoholic" liquors for beverage purposes. In a large number the standard of an intoxicating beverage is fixed at one-half of 1 per cent. And for nearly 20 years the Bureau of Internal Revenue has treated beer containing one-half of 1 per cent. or more of alcohol as a malt liquor, and the brewers of the country have acquiesced in this definition of beer. And it is not unlikely that the present Congress, in enacting a Prohibition Enforcement Bill, will undertake to define what is intoxicating liquor, and if it does may undertake to fix the standard at one-half of 1 per cent. in accordance with the rule established for so many years in the Bureau of Internal Revenue. But, in the absence of some definitive legislation, the meaning of the term "intoxicating liquors" is clearly

left as a question of fact, and not of law, and the courts cannot undertake to say, as matter of law, that liquor which contains 2.75 per cent. of alcohol by weight is not intoxicating. And neither the opinion of my Associates, nor the opinion of the district judge, contains anything to the contrary. In the opinion of the district judge he expressly declared "that the question whether beer having 2.75 per cent. of alcohol is intoxicating" was not before him for decision.

I summarize my conclusions as follows:

1. The acts of Congress herein involved are constitutional.

2. They relate to liquors which are intoxicating.

3. Whether liquor which contains 2.75 per cent. of alcohol in weight is intoxicating is a question of fact, which will be determined as such when the case reaches final hearing, the majority of the court having decided that the bill should not be dismissed except as against the United States attorney.

4. That the bill should have been dismissed not only as against the United States attorney, but also against the acting and deputy collector of internal revenue.

5. That a United States attorney under certain circumstances may be restrained from instituting criminal proceedings under an unconstitutional law.

6. That under the circumstances existing in this case he cannot be restrained from instituting such proceedings under a constitutional law, the construction of which it is alleged he misapprehends.

HOUGH, Circuit Judge (dissenting in part). In the result reached by Judge WARD I concur, and with the opinion I agree, except in so far as it bases the modification of injunction order on a lack of "power to stay the United States attorney" from instituting any and every criminal proceeding under any constitutional statute.

The matter is one of degree, not of kind or power. A prosecuting officer's threatened act may be so preposterously unlawful (though not unconstitutional) as to justify the intervention of equity.

Injunction is always against human action, and no logical difference, either as to wrong or remedy, can be pointed out between unconstitutional human action and similar action without color of law therefor.

The wrong here complained of, however, was and is that of the Internal Revenue Department of the Treasury. Under laws in force long before 1918, every brewer (practically) brewed on sufferance of the commissioner. As July 1, 1919, approached that official threatened to refuse the licenses and stamps, without which brewing is absolutely illicit, and subjects the brewer to confiscatory proceedings and penalties of extreme severity. The plain intent was to enforce a strained construction of the act of November 21, 1918, by preventing brewers from complying with pre-existing and unrepealed law.

So far as I can now see, the injunction against the collector stops that plan, and I regard the relief obtained below against the United States attorney as in effect preventing that official from asking at the hands of a grand jury indictments for offenses created only by the act of November 21st itself.

Such possible indictments would not involve preliminary seizure of plant and tools, and they should be left to their course at common law, except under circumstances of extreme necessity, not here shown. This dissent, then, is limited to the reason assigned for a result to which I agree.