# UNITED STATES

### v.

# PORTO RICO BREWING COMPANY.

---

San Juan, Criminal, No. 1178.

THE PROHIBITION SECTION OF ACT OF NOVEMBER 21, 1918.

Porto Rico—Decisions in the States.

    1. Decisions in the states may not always apply to Porto Rico inasmuch as national police power is a different thing in the states from what it is in the territories.

United States v. Porto Rico Brewing Co.

Congress—Restricting Its Power.

    2. Congress is supreme in Porto Rico, but it has limited the force of the national statutory laws to those locally applicable.

War Power—Unlimited.

    3. There is no limitation to the war power in cases of actual necessity; secus when there is no necessity, such as after the armistice.

Interpretation—General Words.

    4. Where special words are used in a statute followed by general words preceded by the word "other," the special words are to be considered as in the same class as the general words. The general phrase assembles and determines the meaning of the preceding individual phrases.

Indictment—Implication.

    5. In the indictment nothing can be left to implication in describing the offense.

Opinion filed August 23, 1919.

———

*Mr. Miles M. Marlin* for plaintiff.

*Mr. C. Coll y Cuchi* for defendant.

HAMILTON, Judge, delivered the following opinion:

On July 18, 1919, a criminal information was filed against the defendant for selling 180 bottles "containing an alcoholic drink known as 'Cervina' of more than a half of 1 per cent in volume and weight of alcohol." On the back of the information it is said to be for violating § 1, subd. 4 of Act of Congress of November 21, 1918. This is what is commonly known as the prohibition rider to the Agricultural Bill, and the particular violation charged is that of the clause reading as follows:

"After June thirtieth, nineteen hundred and nineteen, until

United States v. Porto Rico Brewing Co.

the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, no beer, wine, or other intoxicating malt or vinous liquor shall be sold for beverage purposes except for export." [40 Stat. at L. 1046, chap. 212, Comp. Stat. § 3115 $\frac{11}{12}$ fff.]

To this a demurrer was duly filed alleging that the facts stated do not constitute an offense in that the information does not charge defendant with selling any intoxicating drink or beverage. The point involved, therefore, is whether under the section in question it is necessary to charge that the beverage is intoxicating.

1. The words of the statute must be considered in the light of the surrounding circumstances. Among these it must be noticed that decisions in the states may not be entirely applicable to Porto Rico in view of the fact that, while the national government has no general police power (Keller v. United States, 213 U. S. 138, 144, 53 L. ed. 737, 738, 29 Sup. Ct. Rep. 470, 16 Ann. Cas. 1066), it is otherwise as to territories. Thus it has been held that while the Federal Employers' Liability Act is not applicable in the states, it is applicable in territories, and in particular is applicable in Porto Rico. American R. Co. v. Birch, 224 U. S. 547, 56 L. ed. 879, 32 Sup. Ct. Rep. 603. As to territories it has been held by a long line of decisions that Congress stands in the place of a local legislature, and whatever Congress enacts is, under the territorial clause of the Constitution, applicable to such territories regardless of the power of Congress within one of the integral states of the Union. This applies to the District of Columbia as well as to Porto Rico.

### United States v. Porto Rico Brewing Co.

2. On the other hand there are conditions local to Porto Rico, and war must also be taken into account in considering the statute. Congress is supreme in Porto Rico, if it will, but Congress has seen fit to restrict its general power by enacting the Organic Act of March 2, 1917, which prescribes in § 9 that "the statutory laws of the United States not locally inapplicable shall have the same force and effect in Porto Rico as in the United States, except Internal Revenue Laws." There had been a good deal of prohibition legislation in the United States, and Congress in this Organic Act provided that "it should be unlawful to import, manufacture, sell, or give away or to expose for sale or gift any intoxicating drink or drug," giving, however, to Porto Rico the right to repeal this provision at an election. In point of fact, the election when held affirmed the provisions, and Porto Rico is now acting under prohibition as above defined. This would seem to show, therefore, the intention of Congress to leave prohibition as many other matters to local discretion.

3. To the extent that the Act of Congress of November 21 is under the war power, however, there can be no limitations. When the nation is at war its very existence may be and in the late war was at stake, and all things have to yield to the imperious necessities of such a conflict. It is quite true that the Constitution is to be construed as a whole, and that there is no presumption that private property or private rights are to be taken even under the war power except in case of actual necessity, and not merely because of convenience or even because of a technical state of war. Ex parte Milligan, 4 Wall. 120, 18 L. ed. 295; Legal Tender Cases, 12 Wall. 457, 543, 20 L. ed. 287, 309. The right of taking private property or otherwise can

United States v. Porto Rico Brewing Co.

only be exercised in a national emergency, and the emergency must be shown to exist before the taking can be justified. Mitchell v. Harmony, 13 How. 115, 135, 14 L. ed. 75, 84. (Taney, Ch. J.) From public history judicially known to the court, it is unquestionable that there was no such emergency at the time the Act of November 21, 1918, was passed. Seven days before the President had in an address to Congress already stated that "the war thus comes to an end," and "it is impossible for the Germans to renew it," and in his proclamation three days before the passage of the act he referred to the "complete victory which had brought us peace." There have been many declarations and acts of the Executive Department to the same effect both before November 21 and in the interval between November 21 and June 30, when this particular provision of the act was to go into effect. In short, so far as it could be affected by governmental action, the country by June 30 was practically upon a peace basis, although the change from war to peace industries and the demobilization of soldiers was not fully effected and indeed has not been fully effected up to the present, nor has the treaty of peace negotiated with Germany and other nations with which we were at war yet been ratified by the Senate. Nevertheless although there was no war emergency existing on June 30 when the provision now in question was to go into effect, it cannot be said that the provision is locally inapplicable to Porto Rico. The encampment at Las Casas may have been disbanded but demobilization was not complete. There can be but one demobilization of the American Army, and that is not yet complete. The act applied to Porto Rico.

4. The exact question to be determined is whether under such

XI. Porto Rico.—26.

United States v. Porto Rico Brewing Co.

circumstances the words "beer, wine," are absolute in their meaning, or whether they are to be construed in connection with the immediate succeeding words, "or other intoxicating malt or vinous liquors." The point has received great consideration, particularly in the opinion filed May, 1919, by Judge A. N. Hand in the case of Jacob Hoffman Brewing Co. v. McElligott, in the District of New York [259 Fed. 321]; afterwards affirmed by the circuit court of appeals June, 1919 [170 C. C. A. 487, 259 Fed. 525]. These cases are not in all points the same with the one at bar, because they arise on the civil side of the court, in suits in equity to enjoin officials from enforcing the law in question against certain brewing companies, while the case at bar is on demurrer to a criminal information. The question as to the construction of the same statute must be the same, however, and the conclusion there reached must be the conclusion reached from any critical point of view. It is quite true that in the Church of Holy Trinity v. United States, 143 U. S. 457, 36 L. ed. 227, 12 Sup. Ct. Rep. 511, the Supreme Court construed a statute to mean something which did not appear upon the surface, and declared that courts have the right to disregard useless wording when as surplusage it interferes with the true object of a statute. This principle, however, does not apply in the case at bar. The 18th Amendment, declaring prohibition in the United States, does not go into effect until January, 1920, and cannot now be taken into account. Social or political questions or desires cannot be taken into account by a court. A court is to construe a statute as it finds it, not as it would have been made or even as it ought to have been made. These are questions for the legislature, and not for the court.

A general phrase assembling, so to speak, the preceding in-

dividual phrases, is to be construed as determining the general meaning. When St. Paul speaks of "neither life nor death nor principalities nor powers nor any other creature," he is to be construed as thinking of these different things and considering them under the class of creatures. The law forbidding the mailing of "books, pamphlets, letters, or other publications of an indecent character," implied that the things first enumerated were also publications. United States v. Loftis, 8 Sawy. 194, 12 Fed. 671. This has indeed been declared by the United States Supreme Court to be a well-defined rule of construction. United States v. Chase, 135 U. S. 255, 258, 34 L. ed. 117, 118, 10 Sup. Ct. Rep. 756, 8 Am. Crim. Rep. 649 [Lamar, J.], as was recognized by Congress when, after the Chase Case, it amended the act to embrace letters which were not publications. Andrews v. United States, 162 U. S. 420, 40 L. ed. 1023, 16 Sup. Ct. Rep. 798; United States v. Cohn, 2 Ind. Terr. 474, 52 S. W. 39.

The Selective Service Law of May 18, 1917, 40 Stat. at L. p. 76, chap. 15, Comp. Stat. § 2044a, 9 Fed. Stat. Anno. 2d ed. p. 1136, forbade the sale of intoxicating liquors at military reservations. The Food Control Act of August 10, 1917, 40 Stat. at L. p. 276, chap. 53, Comp. Stat. § 3115⅛ e, Fed. Stat. Anno. Supp. 1918, p. 181, referred to in the act now in question and to be taken therefore in pari materia, forbids the use of food materials for the production of distilled spirits for beverage purposes, and distilled spirits might otherwise be expressed for present purposes as intoxicating liquors. The legislative history (Blake v. National City Bank, 23 Wall. 317, 319, 23 L. ed. 120) of the prohibition rider now under discussion seems to show that amendments prohibiting alcoholic beverages in gen-

United States v. Porto Rico Brewing Co.

.eral failed of enactment, and the present provision, which uses the word "intoxicating," was substituted.

Upon the whole, therefore, there seems to be no other reasonable construction of the present statute than that the words "other intoxicating" show that the previous words "beer" and "wine" must be interpreted as being also intoxicating.

5. This being so, "intoxicating" should be used in the indictment in describing the offense; for in charging an offense nothing is to be left to implication. United States v. Staats, 8 How. 41, 12 L. ed. 979. Whether the court is to determine the meaning of the word or whether it is a question of fact to be determined by jury need not of course be discussed at present. The only point decided is that it is necessary in a prosecution under § 4 of the Act of November 21, 1918, to charge that the beverage is intoxicating. This being so, the demurrer must be sustained.

It is so ordered.