UNITED STATES v. PITTSBURGH BREWING CO. et al.　SAME v. INDEPENDENT BREWING CO. et al.　SAME v. OLMSTEAD.

(District Court, W. D. Pennsylvania.　May Term, 1919.)

Nos. 65-67.

INTOXICATING LIQUORS ☞216—INFORMATION FOR VIOLATION OF WAR-TIME PROHIBITION ACT.

　　In an information charging violation of War-Time Prohibition Act, prohibiting the manufacture or sale for beverage purposes of "beer, wine or other intoxicating malt or vinous liquor," by the manufacture or sale of "beer" for beverage purposes, it is not necessary to aver that such beer was intoxicating.

Criminal prosecutions by the United States against the Pittsburgh Brewing Company and others, against the Independent Brewing Company and others, and against Daniel Olmstead. On demurrers to informations. Overruled.

R. L. Crawford, U. S. Atty., of Pittsburgh, Pa.

C. A. Fagan, Reed, Smith, Shaw & Beal, and R. A. & James Balph, all of Pittsburgh, Pa., for defendants.

THOMSON, District Judge. We have here three informations, which were filed under federal practice by leave of court—the first against the Pittsburgh Brewing Company and its officers, charging the illegal sale of 10 barrels of beer; the second against Daniel Olmstead, charging the illegal sale of certain glasses of beer; and the third against the Independent Brewing Company, wherein it is charged, first, that the defendants illegally manufactured certain beer, and, secondly, that they sold such beer after its manufacture.

The informations in each case aver that the beer in question contains as much as one-half of 1 per cent. of alcohol, and also aver that

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the sales were made for beverage purposes. To these several informations the defendants have demurred, wherein they allege that the informations, respectively, are not sufficient in law, and particularly because the informations do not allege that the beer in question was intoxicating.

These informations were drawn under the act of Congress approved November 21, 1918, which is commonly known as the War-Time Prohibition Act (40 Stat. 1047, c. 212). The substance of the act, so far as it is material to these informations, provides that for the purpose of conserving the man power of the nation, and to increase efficiency in the production of arms, munitions, ships, food, and clothing, for the army and navy, it shall be unlawful after June 30, 1919, until the conclusion of the present war, and thereafter until the termination of demobilization, to use any grains, cereals, fruit, or other food product, in the manufacture or production of beer, wine, or other intoxicating malt or vinous liquor for beverage purposes, and after June 30, 1919, it shall be unlawful to sell distilled spirits or any beer, wine, or other intoxicating malt or vinous liquor for beverage purposes, except for export.

Congress was here clearly legislating with reference to certain intoxicating beverages, and among these they specified beer and wine. They must, of course, be presumed to have used these terms according to their usual and ordinary signification, as they were known in common use, well understood, and well defined. Prior to the passage of this act, namely, February 6, 1919, the Commissioner of Internal Revenue promulgated certain regulations forbidding the brewing of beer on or after May 1, 1919, where the alcoholic content should exceed one-half of 1 per cent. by volume, and forbidding the sale of beer after June 30, 1919, having a greater alcoholic content than one-half of 1 per cent. by volume. On the same day the Treasury Department of the United States, by regulation or decision, interpreted the act of November 21, 1918, declaring "within the intent of the act of November 21, 1918, a beverage containing one-half of 1 per cent. or more of alcohol by volume, will be regarded as intoxicating." While this is by no means conclusive of the legislative interpretation of the act in question, the Supreme Court of the United States has said that such interpretations are entitled to great weight.

The important question raised by the several demurrers is: Is it necessary in the information to aver that the particular beer charged to have been unlawfully sold, is intoxicating? If an act of Congress prohibited the manufacture and sale of opium, morphine sulphate, and other poisonous narcotic drugs, this would be a legislative declaration that opium and morphine sulphate were narcotic and poisonous, and it would not be necessary, in an information charging their illegal manufacture and sale, to charge that they were in fact narcotic and poisonous. It would not even be open to the defense either to aver or prove that these drugs were not narcotic or poisonous, if in fact they were opium or morphine sulphate. They could only escape by showing that the drugs which they manufactured and sold, were in fact neither opium nor morphine sulphate.

So here, when Congress used the words "beer, wine and other intoxicating beverages," we have a legislative declaration that beer and wine are intoxicating beverages. This being true, it is not necessary in the information or indictment to aver their intoxicating character, because the Legislature has so declared. The defendants may avoid on trial the effects of the statute by proof that the beverage wh..n they sell is in fact neither beer, wine, nor spirits. We are dealing, therefore, here with a demurrer which, in the eye of the law, admits for the purposes of the argument the truth of the facts set forth in the information, namely, that the defendants sold beer, that they sold it for beverage purposes, that it contained an alcoholic content of at least one-half of 1 per cent. and that it was not sold for export.

On this motion, therefore, I think the information sufficient, and the demurrers must therefore be overruled, and they are accordingly overruled in each case, and the defendants are directed to plead.