BURLESON, POSTMASTER GENERAL, v. DEMPCY ET AL., CONSTITUTING THE PUBLIC UTILITIES COMMISSION OF ILLINOIS, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 1006. Argued May 5, 6, 1919.—Decided June 2, 1919.

Decided on the authority of *Dakota Central Telephone Co.* v. *South Dakota, ante,* 163.
Reversed.

THE case is stated in the opinion.

*Mr. Henry S. Robbins,* with whom *The Solicitor General* was on.the brief, for appellant:

A suit against the Postmaster General or his agents, which seeks to control him in the matter of telegraph charges is in legal effect a suit against the United States.

Under the joint resolution, pursuant to which the President operates the telephone and telegraph lines, the power to fix rates, both interstate and intrastate, is in the President. The States have no power to estalish intrastate rates. Otherwise construed, the act of Congress would be unconstitutional.

The power to conduct a war is divisible into the power to provide the man power and other resources, and the power to direct their use. Thus the Constitution gives Congress only powers "to lay and collect taxes . . . to . . . provide for the common defence," "to raise and support armies," "to provide and maintain a navy," "to make rules for the government and regulation of the land and naval forces," "to provide for calling forth the

militia to execute the laws of the Union," to "provide for organizing, arming, and disciplining. the militia," and to pass all laws "necessary or proper" to enable the President to make war. The above power "to make rules for the government and regulation of the land and naval forces" does not include the power to direct their operation for the reason that this latter power, although contained in the Articles of Confederation, was omitted from the Constitution. Consistently with these powers, which are conferred upon Congress, the President is made commander-in-chief of the army and navy, and is vested with all power of an executive nature. Thus Congress is given the power to provide the resources for the conduct of a war, while the President is given power to direct the use of such resources. The purpose and effect of this joint resolution was to provide the President with certain resources for the successful prosecution of the war. This was clearly a legislative act and properly pertained to Congress. Having provided the President with these particular resources, the control and operation of the lines belong to the President, not merely under the terms of the joint. resolution, but by reason of the fact that such control and operation involve the exercise of the power to conduct the war. Hence, the power to control and operate the telegraph lines, given into the possession of the President by the act of Congress, belong to the President under the Constitution, and not merely under the act of Congress. It follows that his control and operation cannot be made subordinate to the will of any State.

The rate-making power is not reserved to the States under the proviso which authorizes the States to enact lawful police regulations.

The correctness of this construction appears from the purpose and policy of the act in question.

A state law establishing intrastate telegraph rates,

even if enacted under the police power, is invalid, because a direct interference with the war powers of the Federal Government.

The history of the proviso in question discloses that Congress did not intend to reserve to the States the power to establish intrastate rates.

*Mr. Raymond S. Pruitt,* Assistant Attorney General of the State of Illinois, with whom *Mr. Edward J. Brundage,* Attorney General of the State of Illinois, and *Mr. George T. Buckingham* and *Mr. Matthew Mills,* Assistant Attorneys General of the State of Illinois, were on the brief, for appellees:

This suit will lie to enjoin the Postmaster General.

The Postmaster General is the moving party in this litigation, and by applying to the District Court for a construction of his powers and the powers of defendants over intrastate telegraph rates, he submitted himself to the jurisdiction and protection of the court, and waived his asserted immunity from suit.

Congress by the proviso in the Joint Resolution of July 16, 1918, in effect specifically ordered that the powers thereby conferred upon the President shall not be construed to amend, repeal, impair or affect the existing police regulations of the States relative to intrastate commerce, including the fixing of reasonable intrastate rates to be charged and collected by telegraph companies.

Assuming that Congress, as a war measure, might have enacted appropriate legislation, wiping out of existence for the period of the war all state control over intrastate rates, the power to fix rates, which is legislative in its nature, could not have been legally conferred upon the President or any executive officer. *Milwaukee Electric R. & L. Co.* v. *Railroad Commission,* 238 U. S. 174, 180; *Field* v. *Clark,* 143 U. S. 649, 692.

· MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

In a suit commenced by the Postmaster General, the members of the Public Utilities Commission of Illinois and the Attorney General of that State filed a cross-bill to enjoin the Postmaster General from enforcing telgraph rates which he had directed to be charged for services rendered over lines which were in the possession, under the control, and being operated by the United States under authority of the resolution of Congress and the proclamation of the President considered in *Dakota Central Telephone Co.* v. *South Dakota,* this day announced, *ante,* 163.

· The theory of the cross-bill was that the United States in operating the lines was governed as to intrastate rates by state authority and could not lawfully exact for such services rendered any charges but those which the State sanctioned. The court below upheld this view and therefore permanently enjoined the Postmaster General from charging any other than the state rates for the intrastate business. The case is before us on appeal from the decree to that effect.

As there is no difference in legal principle as to the question of power between the *Dakota Central Telephone Case* and this, it follows that the decision in that case is conclusive here and makes certain the error committed below. In this case, therefore, as in that, as a decree of reversal will dispose of every issue in the case, it follows that the decree below must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

*And it is so ordered.*

MR. JUSTICE BRANDEIS dissents.