UNITED STATES v. BERGNER & ENGEL BREWING CO.

(District Court, E. D. Pennsylvania. July 17, 1919.)

Nos. 6 and 7.

INDICTMENT AND INFORMATION &146—RULING ON DEMURRER TO INFORMATION UNDER WAR-TIME PROHIBITION ACT.

Ruling on a demurrer to an information charging violation of War-Time Prohibition Act, § 1, by the manufacture of "beer" for beverage purposes, refused, where the purpose was to obtain a construction of the statute, and a ruling as to whether the particular beverage made by defendant is within its prohibition, which is a trial question.

Criminal prosecution by the United States against the Bergner & Engel Brewing Company. On demurrer to information. Ruling withheld.

Francis Fisher Kane, U. S. Atty., of Philadelphia, Pa., and W. L. Frierson, Sp. Asst. Atty. Gen., for the United States.

Theo. F. Jenkins, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. Whenever, as here, a controversy has arisen over the meaning of words or phrases, it is dangerous to employ a paraphrase in which to present the dispute, because the paraphrase may be as open to opposing constructions as the original phrase. We will therefore present this controversy by the quotation of the very words, the use of which by Congress has provoked it. Congress, by Act Nov. 21, 1918, c. 212, 40 Stat. 1046, prohibited the use of cereals in the manufacture of "beer," etc., "or other intoxicating * * * liquor." etc.

Informations have been filed in which it is charged that the defendant did use cereals in the manufacture of "beer," contrary to the form of this act of Congress. It will be noted that the charge contains no averment that the beer thus made was intoxicating. The omission was

&For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

intentional and the averment advisedly not made. This was because the meaning of the act of Congress is asserted to be that the manufacture of beer is forbidden as such, as well as other beverages, if the latter are intoxicating.

Demurrers have been interposed to the informations because the defendant construes the act of Congress to mean that neither the manufacture of beer nor of any other beverage is forbidden, unless it is intoxicating, and, as the beer made by the defendant is not averred to be intoxicating, the information does not charge any offense against the law to have been committed. It will be observed that no answer to the question before us as thus presented can be given without giving a construction of the act of Congress. The law of the case would thus be declared in advance of trial. It is, indeed, frankly avowed that the securing of this construction is the real purpose of the present proceeding. It is intended to be a "test case."

In view of the disposition we have decided to make of the case as now presented, it is proper that there should be interpolated at this point a statement of the attitude of the court, and the particular circumstances affecting that attitude, including what has already been done toward reaching a ruling in a test case. Speaking for both its members, this court would willingly render all the aid within its power to uphold the law and compel its observance, and to save the people from the scandal of being obliged to witness attempts being made to experiment with the criminal law in the effort to find out how far its violators could go before inviting punishment. The people should also be saved, if possible, from the scandal of witnessing violations of law by a large number of persons sought to be justified by the plea that there is a doubt of the criminality of what is being done, whether the doubt is real or a mere pretense.

Ordinarily, when a question arises of whether a given act would be a violation of law and subject the violator to a criminal prosecution, good citizenship, as well as common prudence, would dictate refraining from what even might be a crime, and no one would be justified in counseling the experiment of testing its criminality. Any one who thus experimented should do it with his eyes open to the possible consequences, and should receive small measure of sympathy if punishment overtook him. The principle of law, voiced in the legal maxim that "ignorance of the law excuses no one," is a necessary doctrine, and when applied to the criminal law is not a harsh one. When, however, we learn that the act of Congress was passed wholly and solely to conserve our food supply, and that it forbids some things to be done and permits others, and when we further learn that men whose profession and business it is to know the law, and judges whose official duty it is to declare it, differ in opinion of what may be done and what may not be done, no one possessing any degree of intellectual honesty can deny that all doubts of what is the law should be authoritatively settled, in order that the law may be obeyed.

One of the difficulties of the general subject is that this law deals with beverages many of which are beyond all question intoxicating, and all of which are believed, at least by many persons, to be intoxicat-

ing. Indeed, this very demurrer is based upon the proposition that they are all intoxicating, or their manufacture is not prohibited, and the prosecution admits that they have been branded by Congress as intoxicating, although contending that those specifically prohibited in the act (as beer is) are prohibited as such, and that their alcoholic contents need not be averred or proven. Certain words and phrases, such as "intoxication," "intoxicating liquors," "alcoholic drinks," "prohibition," and the like, are words which, following the well known phrase, coined by Oliver Wendell Holmes, are said to be "polarized."

It is difficult to separate in thought a purely revenue or economic enactment dealing with intoxicants from those laws which are passed in pursuance of the police power of government, and have for their motive and purpose the protection of the morals or health of the people. The law with which we are now concerned has, of course, no relation to any such purpose as that indicated. Indeed, at the time of its enactment, Congress had no power to have directly so legislated. The legal purpose and intent of the law was wholly aside from and outside of this latter class of legislation. This thought has an important bearing upon the construction to be given to the act. It was well within the power of Congress, and clearly germane to the subject of legislation with which Congress was dealing, to have prohibited the manufacture of any beverages, whether intoxicating or not, or to have prohibited only those which are intoxicating.

The broad question upon which we are asked to express an opinion is: What did Congress do? Consistently with our expressed willingness to render any aid in our power to render, we should answer this broad question, if any good result would thereby be accomplished. We are, however, unable to see that any result would flow, other than the expression of one more opinion on the subject. Attempts are often made to secure the expression of such opinions. They are often, however, judicial only in the sense that they are given by men who hold judicial office. We have, in our present system of law, no branch which may be called advisory. It might be of advantage to have one, as is advocated by many who are active in promoting law reforms. A good objection to the exercise of such a function is that judges do not possess the power. Attempts have been made to have the meaning of this law declared by securing decisions which are really judicial. We must await the determination of this litigation to learn its results.

A proceeding was instituted in the District Court for the Southern District of New York. The meaning of the act of Congress was there discussed, and the opinion accompanying the ruling made gave a construction to the act. A bill in equity was then filed to restrain the revenue officers and the District Attorney from enforcing the provisions of the act otherwise than in accordance with this construction. The motion for the injunction was heard by another judge of the same court. He followed the construction already given and allowed the injunction. Hoffman Brewing Co. v. McElligott, 259 Fed. 321. An appeal was then taken to the Circuit Court of Appeals of the Second Circuit, and the decree awarding the injunction, so far as it affected the district attorney, was reversed; but the opinion placed the reversal on

other grounds than that of a wrong meaning having been given to the act of Congress. 259 Fed. 525, —— C. C. A. ——. An indictment was then found and brought into the District Court for the District of Maryland, to which a demurrer was interposed. The judge before whom the demurrer was argued was asked to construe the act of Congress, and base his ruling upon the construction given to it. The court took the view that, independently of the opinion which he might entertain of the meaning of the act of Congress, he should give to it the same construction given to it by the courts of the Second circuit. The demurrer was accordingly pro forma sustained. United States v. Standard Brewery, 260 Fed. 486. From this judgment an appeal has been taken to the Supreme Court and is there pending.

There are now added to this list rulings by the courts of different districts which are at least in form conflicting. If the construing of the act at this time would lighten the labors or lessen the responsibilities of the Judiciary Department, or the withholding of a ruling would deprive the defendant of a right, the duty of now deciding the question we are asked to decide would be presented. We do not see, however, that it is before us. The real question is merely one of pleading. Indeed, the line sought to be drawn by the defendant is so fine that the untrained eye has difficulty in following it. There is no criticism of the form of the informations. They in apt terms charge the offense as the act of Congress defines it. Giving the law the meaning for which the United States contends, it is admitted that the informations are good. If the meaning be otherwise, then all which is required is the insertion of one word in the informations.

The real question presented is not answered by disposing of this demurrer. It merely has changed its form from what the information must say is the fact to what is the fact. The only practical result reached is the regulation of the proofs at the trial. It cannot be said (until the law is so found to be) that the question cannot be ruled as a question of pleading because it has been so ruled. It may, however, be ruled as a trial question upon the ground that, as the offense is charged in the words of the statute, the words have the meaning in the information which the same words have in the law. The thought is that the word "beer" in the law means the beverage which in the common speech of the people is known by that name. If the defendant has not made "beer," but has made some other liquor or beverage, then it is admitted that there must be proof that the liquor made is intoxicating. Assuming that beer, the manufacture of which is forbidden, is intoxicating (as would doubtless be asserted if it were necessary to assert it), and assuming that Congress has branded "beer" as intoxicating (as is practically admitted), the fineness of the line sought to be drawn by defendant is disclosed, and it also appears that the question raised is a trial question rather than one of pleading.

The defense suggested on which the demurrers are based is really this: The defendant is charged with making beer, the manufacture of which Congress has forbidden. The forbidden beer has a certain range of alcoholic content which makes it intoxicating, and Congress has called it intoxicating. The beverage which defendant has made has a

less alcoholic content, and is not intoxicating. It is in consequence not the forbidden "beer." Presented in this way, the question is clearly a trial question. The real question may therefore be ruled as a trial question. When a question can be so ruled, it is usually the part of practical wisdom not to rule it as a question of pleading, and the demurrer might be overruled on this ground. When there is added to this the reasonable expectation that the question will be authoritatively settled before any trial could be ended, there would seem to be no need to anticipate the ruling.

The real situation seems to be that the defendant asks to be advised. Put in its best light, the attitude is this: Congress has forbidden the manufacture of "beer." We think Congress had in mind that "beer" is intoxicating. What we want to know is that, if we make a beverage which, although having some of the characteristics of beer, has such a low alcoholic content as not to be intoxicating, will this be a violation of the law? We ask for the opinion of the court, in order that we may know what we may do.

Among the many objections to complying with this request is that such an expression of opinion will not settle the law. It may, in consequence, do more harm than good. Assume either meaning of the act of Congress contended for to be found by this court. Assume either construction to be upheld by the Supreme Court. If the defendant's construction is upheld, there is nothing for this court to do; but, if the correctness of this construction be denied, then every defendant who is brought up for sentence is in one of two situations: He has violated the law, in defiance of the pronouncement of the court that he was violating it, or he has done only what the court told him he had the right to do. Why should the court voluntarily create this embarrassment for itself? If the answer is that the law should be settled, and a test case ruling made for this purpose, the reply is that this has already been done, and nothing is gained by having two or more test cases to present the same question. Let the man who chooses to take the risk of violating the law by doing what may be found to be a violation take the whole responsibility for so doing. There is no call upon the court to share the responsibility with him. If he is in need of advice, he must go to his lawyer for it. Under our system of laws it is no part of the duty of the judges of the courts to advise prospective litigants.

The defendant has leave to withdraw the demurrers filed, and to plead to the informations, or, if counsel prefer not to do so, the demurrers will be disposed of when the case is ready to be tried.

We have withheld the foregoing opinion until we received copies of the rulings in other districts, which we were advised were in course of transmission to us. We now have two of them—one sustaining the demurrer and the other overruling it. We find ourselves in accord with the ruling of Judge Thomson of the Western District of Pennsylvania. United States v. Pittsburgh Brewing Co., 260 Fed. 762. The only difference is that he has seen fit to overrule the demurrer now, and we do not see any occasion to make any formal ruling at this time. All that is really involved is a regulation of the burden of proof, and this, as we have said, is properly a trial ruling.