## UNITED STATES v. MINERY.

(District Court, D. Connecticut. July 22, 1919.)

1. INTOXICATING LIQUORS ☞2½, New, vol. 8A Key-No. Series—CONSTITUTIONAL LAW—WAR-TIME PROHIBITION.
   War-Time Prohibition Act Nov. 21, 1918, does not violate the Tenth Amendment to the Federal Constitution, which reserves to the states powers not delegated to Congress.

2. INTOXICATING LIQUORS ☞132—WAR-TIME PROHIBITION—DURATION OF ACT.
   Act Nov. 21, 1918, prohibiting the manufacture and sale of intoxicating liquors "until the conclusion of the present war," is applicable to a sale on July 8, 1919, since no treaty had then been signed with Austria, and the army had not been entirely demobilized.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. INTOXICATING LIQUORS ⬤⟶13—CONSTITUTIONAL LAW—WAR-TIME PROHIBITION.**

> The Eighteenth Amendment to the federal Constitution, providing for national prohibition in 1920, does not invalidate War-Time Prohibition Act Nov. 21, 1918, upon ground that prohibition legislation is precluded until 1920.

Information by the United States against Stephen A. Minery. Demurrer to information overruled, and defendant ordered to appear and plead over.

. John F. Crosby, U. S. Atty., of Hartford, Conn.

Arnon A. Alling, of New Haven, Conn., and William A. King, of Willimantic, Conn., for defendant.

CHATFIELD, District Judge. The defendant has been brought into court on an information charging that on or about July 7, 1919, he did unlawfully and knowingly, "before the conclusion of the present war, and before the termination of demobilization, the date of which is to be hereafter determined and proclaimed by the President of the United States, sell distilled spirits, beer, wine, and other intoxicating malt and vinous liquors, for beverage purposes, the said distilled spirits," etc., "not being then and there sold for export, sacramental, medicinal, or other than beverage uses," etc., contrary to the provisions of the statutes of the United States.

The defendant has demurred to this complaint upon the grounds (1) that the facts set forth in the information do not constitute a crime under the laws of the United States; (2) that the act was committed on or about the 8th day of July, 1919, and therefore not on a day before the conclusion of the present war; (3) that the law of November 21, 1918 (chapter 212 of 65th Congress, 2d Session, 40 Stat. 1045), under which the defendant is charged, is unconstitutional, in that it contravenes amendment 10 to the Constitution of the United States reserving to the states, respectively, such powers as that of regulating the sale of spirituous and intoxicating liquors within each respective state; (4) that the act of November 21, 1918, is unconstitutional and void in that it contravenes the provisions of the 18th amendment, which prohibits after January, 1920, the sale of intoxicating beverages, and thus specifically withholds from Congress until January, 1920, the power to prohibit the sale of spirituous and intoxicating liquors within any particular state; (5) that the act of November 21, 1918, is unconstitutional, in that it provides for the operation and enforcement of provisions for war after the termination of the war, and until termination of demobilization by the express language of the statute, which thus shows that the act is to continue after the war emergency has ended and the war subsided; and (6) that the information does not allege any emergency or necessity which could be denominated war, and which therefore could be a basis for such legislation.

No separate discussion of the first and sixth grounds of the demurrer is necessary, inasmuch as it is evident that, if the law be upheld over

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the objections raised by the other grounds of the demurrer, these furnish no reason why the law should be held beyond the powers of Congress and unconstitutional.

[1] The third ground of demurrer, that the law of November 21, 1918, contravenes article 10 of the amendments to the Constitution, is also of no force. If Congress had the power to enact this particular law for the purpose of conserving food and increasing the sufficiency of the production of supplies, etc., for the army and navy, it is no objection to an exercise of that power to say that it thereby accomplishes prohibition of the sale of alcoholic liquors, which under other amendments of the Constitution is left to legislation by the particular states.

In the case of In re Kollock, 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813, a tax act for the raising of revenue was upheld although the effect of this law was to prevent deception in the sale of oleomargarine for butter, and although the prevention of this traffic was assumed to be one of the objects of passing the law.

In the case of McCray v. United States, 195 U. S. 27, 24 Sup. Ct. 769, 49 L. Ed. 78, it was held that the taxing power of Congress could not be assailed on the ground that it would destroy or restrict the manufacture of artificially colored oleomargarine. The court said that, if power to tax be within the lawful power of Congress, the exertion of that power may not be judicially restrained because of the results which arise from its exercise, or because the court questions the motive underlying the passage of the law. Where there is power to tax a particular subject, the power to prevent traffic by the exercise of the taxing power is judged solely from the standpoint of whether the tax is lawful. Even if the exercise of that power shall accomplish a result which by itself is not within the power of Congress, nevertheless the law is not unconstitutional if the taxing power be lawfully exercised, so that the indirect result is the mere effect of legal regulation. Hammer v. Dagenhart, 247 U. S. 251, at page 269, 38 Sup. Ct. 529, 62 L. Ed. 1101, Ann. Cas. 1918E, 724, with citations on the following pages.

By analogy it must be held that the prohibition of the sale of intoxicating liquors through the exercise of the power to levy war is within the right of Congress in the exercise of its discretion.

[2] The second ground of demurrer, to the effect that the act charged as an offense in this information was committed on the 8th of July, 1919, that this day is not included within the words, "until the conclusion of the present war," as legally construed, and that the power to carry on the war cannot be extended by act of Congress to include that date, also the fifth ground of demurrer, that the law of November 21, 1918, is unconstitutional, in that it provides for the operation and enforcement of war measures after the conclusion of the war and during a period of peace—that is, until the termination of demobilization—are based upon the fact that a treaty of peace with Germany has been actually signed; that the present German government has ratified the treaty, and actual hostilities on the European front have ceased for some months; that the armies of the United States

are being demobilized; and that the President has stated that the war —that is, armed hostilities—has terminated so that peace is now at hand. The defendant cites the cases of Ex parte Milligan, 4 Wall. 2, 18 L. Ed. 281, and Mitchell v. Harmony, 13 How. 115, at page 134, 14 L. Ed. 75, in which the Supreme Court has held that, in order to have the power granted to the military forces by the Constitution in a state of de jure war invoked, so that personal and property rights of the individual and the powers of civil government can be interfered with, the emergency or necessity must be so urgent that no delay can be considered, and such that the action of the civil authorities would be too late to provide the means which the occasion calls for. But in those cases the question was whether the actual facts existing at the time were sufficient of themselves to show that the rule of the military forces should supersede that of the civil government. The power of Congress to enact a statute was not under consideration.

The defendant further contends that, even if the military necessities were sufficient when the law of November 21, 1918, was passed, to justify the acts of war provided for in the statute, when this necessity or emergency has terminated Congress would lose the power not only to enact new legislation, but to continue in effect laws previously passed, and that such laws must then terminate.

To apply that to the present case the defendant argues that at the present time conditions are not such as to justify Congress, or to uphold the authority of Congress, in passing laws for further prosecution of the war. He therefore argues that, if a law passed when Congress did have such power, is by express words made to continue into the present time, when a state of peace is said to exist, the court should step in and declare the further enforcement of the law unconstitutional.

It may be assumed for the purposes of argument that, if the present law provided that war measures should continue after the war conditions had ceased, power would vest in the court to declare further exercise of the war power unconstitutional. But even this is insufficient to justify a holding by the court that the statute of November 21, 1918, has become of no effect by the conditions existing at the present date. Commercial Cable Co. v. Burleson et al. (D. C.) 255 Fed. 99, and the cases of Dakota Central Telephone Co. v. State of South Dakota, 250 U. S. 163, 39 Sup. Ct. 507, 63 L. Ed. ——; Burleson v. Dempcy et al., 250 U. S. 191, 39 Sup. Ct. 511, 63 L. Ed. ——; MacCleod v. New England Telephone & Telegraph Co., 250 U. S. 195, 39 Sup. Ct. 511, 63 L. Ed. ——; and Northern Pacific R. R. Co. v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. ——, (decided by the Supreme Court, June 2, 1919)—are authorities for the proposition that present conditions do not constitute a state of peace so that government authority under a war measure has entirely ceased.

As a matter of fact we are still technically at war with Austria, and the army which has been conducting the war with Germany and with Austria is not in fact demobilized. The conditions which make it necessary to legislate with relation to the actual maintenance of war

involve also the power to adjust the conditions resulting from the cessation of hostilities so that war may be terminated and peaceful occupations resumed without destructive effects from the exercise of the powers relating to the conduct of the war itself.

The statute of November 21, 1918, was expressly held constitutional in this regard in the case of the Hoffman Brewing Co. v. McElligott and another, 259 Fed. 321, in the District Court of the Southern District of New York, upon the 17th of May, 1919, and this decision was affirmed by the Court of Appeals of this circuit in that regard. 259 Fed. 525, —— C. C. A. ——.

The question under consideration is not whether the War Department has the authority to enact martial law in this country because of war conditions prevailing here, or to determine that the civil courts and civil authorities are not sufficient to protect personal property rights and to protect the individual in the United States. The question is whether Congress has the power to continue war measures, and to enact legislation which shall continue the enforcement of such war measures, until such time as in the discretion of Congress these war measures are no longer necessary.

As a matter of fact, discretion for the termination of this law has been vested in the President after certain fixed conditions shall have happened. Those conditions are within the power of Congress to describe and to define. It follows that the courts have no right to interfere with the exercise of this discretion by Congress, or to attempt to say that different conditions should have been imposed.

[3] The fourth ground of demurrer is that Congress was estopped by the adoption of the Eighteenth Amendment, which is to go into effect in January, 1920, from legislating on the subject of prohibition in such a manner as to enforce prohibition before the prohibition amendment itself shall take effect. The statement of this proposition is its own answer, when we consider that the present law was adopted as a war measure, and had no reference to the taking effect of the prohibition amendment itself. It is a mere incident that the prosecution of the war may necessarily accomplish some of the same results as the prohibition amendment when that shall go in force.

The present war emergency may, and we all hope will, be terminated in the near future. This law is but temporary in effect, and Congress has the power by legislation, until the war emergency shall have terminated, to further legislate so as to terminate the effects of the present law, either by the enactment of a further prohibition statute, or by defining the alcoholic content of the prohibited liquors. But this has no effect upon the right which Congress had on November 21, 1918, to specify in the statute under consideration the conditions under which the statute shall cease to have force.

The present law is not to be held valid just because it is a prohibition measure. It was not passed by Congress on the theory that Congress had constitutional power to pass a prohibition measure. It was passed, as is shown by an examination of the statute of November 21, 1918, for the purpose of "conserving the man power of the nation during the war, and to increase efficiency in the production of arms,

munitions, ships, food, and clothing for the army and navy" by the prohibition of manufacture and traffic in alcoholic liquors, which it must be assumed Congress considered was detrimental from the standpoint of the welfare of the army, and of the people which was supporting the army, and from which the army was to be drawn. In the next sentence the saving of food products is specifically provided for, and must therefore have been one way in which it was intended to increase the efficiency of the nation.

This law was passed, not as an internal revenue measure, but was added to an appropriation bill for the Department of Agriculture, as a war measure pure and simple. When it shall cease conditions will be for a time governed by the law as it was before the war, and this condition will continue until further legislation or until the prohibition amendment takes effect. If that be within a few months, it is because of the adoption of the amendment itself, and this can in no way affect the provisions which Congress saw fit to enact for the conduct of the war in the meantime. Nor can Congress be estopped from enacting a particular law by the fact that it has enacted even some contradictory measure to take effect in the future.

It has been decided in cases cited in Hijo v. United States, 194 U. S. 315, at page 324, 24 Sup. Ct. 727, 48 L. Ed. 994, that in case of a conflict between two acts of Congress, or between an act of Congress and a treaty, the last to be enacted must prevail. But this does not mean that the adoption of the Federal Prohibition Amendment, the Eighteenth Amendment to the Constitution, does away with the law previously existing, and which has to do with the periods of time transpiring before the Eighteenth Amendment goes into effect. With respect to the period now under consideration—that is, the present time— the last enactment of Congress is that of the statute of November 21, 1918, by which the sale of intoxicating liquor is prohibited as a war measure during the emergency of the war. Such emergency is expressly stated in the statute to be after the termination of hostilities until demobilization shall be completed as shown by the proclamation of the President.

In Street v. United States, 133 U. S. 307, 10 Sup. Ct. 309, 33 L. Ed. 631, it was held that an act providing for the reduction of the army by mustering out certain officers was an exercise of the power to raise and support armies. Surely the magnitude of the present war emergency, and the difficulty consequent upon the cessation of hostilities, with the resumption of business under peace conditions, present problems in the way of demobilization which are essentially war measures, and with which Congress has the right to control the activities of the army, and the circumstances surrounding the soldiers during the period of demobilization, as well as to protect the rights of private citizens and the good order of the nation by the suppression of any traffic which will make the work of demobilization and the resumption of peaceful conditions difficult or impossible.

The present statute, therefore, showing no assumption by Congress of power not given to Congress under the Constitution, and presenting no attempt by Congress to extend its proper exercise of its rights

to legislate, by continuing the effect of that legislation into a period over which Congress would not have the right to enact further legislation of the same sort, the demurrer must be overruled, and the defendant ordered to appear before the court, and to plead over to the indictment.