## UNITED STATES v. SCHMAUDER.

(District Court, D. Connecticut. July 23, 1919.)

1. INTOXICATING LIQUORS ⇐=216—WAR-TIME PROHIBITION ACT—INFORMA-TION.

An information under Act Nov. 21, 1918, charging that defendant sold for beverage purposes a malt product "commonly known as lager beer" and containing as much, as one-half of 1 per cent. of alcohol, *held* good on demurrer, although it did not charge in terms that the article was intoxicating.

Criminal prosecution by the United States against Martin Schmauder. On demurrer to information. Overruled.

John F. Crosby, U. S. Atty., of Hartford, Conn.
C. S. Hamilton, of New Haven, Conn., for defendant.

CHATFIELD, District Judge. The defendant appeared in court upon the 12th day of July, 1919, to answer an information charging him with selling on the 8th of July, 1919, "a certain quantity of beer for beverage purposes, said beer being a malt product commonly known as lager beer and containing as much as one-half of 1 per cent. of alcohol by both weight and volume, and said beer not being then and there sold for export, sacramental, medicinal, or other than beverage purposes."

The act charged was alleged to have occurred "before the conclusion of the present war and before the termination of demobilization, the date of which is to be hereafter determined and proclaimed by the President of the United States." This act is alleged to be contrary to the laws of the United States, and the defendant demurred, claiming that the information did not constitute any crime against the United States government, or any violation of any lawful act or order of the same, and especially "in that the said information and complaint failed to allege that the supposed beer alleged to have been sold by the defendant was of such kind and quality as to be intoxicating, and failed to allege any facts which showed that the said supposed beer alleged to have been sold by the defendant contained such quantity of alcohol as to be within the prohibition of any act of Congress or of any proclamation of the President of the United States, and failed to allege that said beer contained a larger per cent. of alcohol than 2.75 per cent., and failed to allege that said beer contained a sufficient quantity of alcohol to render it intoxicating."

The information does not include the word "intoxicating," and the defendant seeks by this demurrer to obtain a ruling that no crime can be committed by the sale of a malt product containing alcohol and being of the general class which has been and is sold over the bar in

saloons as beer, but which is that sort of beer now manufactured by the brewers since the restriction upon the use of grain, and which does not contain so much as 2.75 per cent. of alcohol.

It was argued in support of the demurrer that such beer was not in fact intoxicating, for the reason that before a person could obtain a sufficient quantity of alcohol to intoxicate he would have to drink to such an extent as to make him ill, or to exceed the capacity of consumption at one time. Whether intoxication could be produced by taking the beer in small quantities over a longer period of time, or whether some individuals might be intoxicated by one quantity, while others would not be affected by the same quantity, cannot be ascertained from the information nor from the demurrer.

It is apparent that there is nothing in this record from which the court can determine in any way what amount of alcoholic content would make beer intoxicating and what would not. The demurrer has admitted the facts alleged in the information. The defendant has thereby admitted that he made a sale of beer, which is a product of malt and which is commonly known as lager.

A similar situation is presented by that portion of the statute which relates to the product of grapes produced by fermentation, and the mere statement of the proposition carries with it the answer that a demurrer cannot be used in order to serve the purpose of a trial upon the issue which would be raised if a person came in and denied that the product sold by him was intoxicating, or even if he came in and denied that the product sold by him was the substance known, when the act was passed, as lager beer.

Therefore the only point presented upon this demurrer to the information is whether it is necessary to allege in an information that the beer sold was intoxicating. The information does state that it contains alcohol and is a malt product, and to this extent and in this way the material is excluded from the class of nonalcoholic beverages, such as root beer and other varieties of home-made or harmless drinks which are not the product of malt.

The statute expressly limits the effect of this portion of the law to products of malt and of vinous fermentation. This of itself militates against the idea that the sole purpose of the statute was to conserve food, and indicates that a part of the purpose was to accomplish prohibition, with the incidental beneficial result upon the health of the nation and the increase in orderly behavior which the advocates of prohibition believe will follow restriction of the liquor traffic and the prohibition of alcoholic beverages.

But the statute in question is a part of a bill providing appropriations for the Department of Agriculture in carrying out the law "to provide further for the national security and defense by stimulating agriculture and facilitating the distribution of agricultural products." Certain sections of the law prohibit the use of grains, cereals, fruit, or other food product in the manufacture or production of beer, wine, or other intoxicating, malt, or vinous liquor for beverage purposes. It also prohibits the sale for beverage purposes of any distilled spirits. These provisions of the law are stated to be for the purpose "of conserving the man power of the nation and to increase efficiency in

the production of arms, munitions, ships, food and clothing for the Army and Navy." It is evident that the purpose of the sections of the law relating to alcohol is thus intended to produce conservation of food, and also to further the well-being or the health and the military strength of the nation, which in the opinion of Congress would be injuriously affected by the manufacture and sale of beer, wine, and other intoxicating, malt, and vinous products, and also distilled spirits.

The Commissioner of Internal Revenue is given authority to prescribe regulations under which alcoholic products from the island of Porto Rico may be admitted into the United States for use in industrial purposes in the arts and sciences, but no such alcoholic product is to be used as a beverage. There is in this no mention of alcoholic content. Other importation of distilled spirits, beer, wine, and other intoxicating liquor is prohibited, and all of the provisions are to be enforced until the determination of the present war and during the period of demobilization, which time shall be determined and proclaimed by the President of the United States.

It is apparent that the intent of the Congress was to prohibit the sale of those malt products which were commonly known as beer, which were also commonly supposed to be intoxicating, which had always been classified as intoxicating liquor, and which because of their alcoholic content had some effect upon the production and man power of the nation, while at the same time using in their manufacture some of the food products of the nation, which were needed for the purposes of the war and for the purposes of restoring conditions at the termination of hostilities, so far as Congress had power to regulate conditions after the war as a part of its military operation and conduct.

It is evident that if Congress, by making a tremendous drain upon the resources of the country for immediate war purposes, should thereby make it necessary to regulate the use of material immediately thereafter, in order to bring matters back to a normal base, the laws by which such restoration would be had can properly be made a part of the military measures which must be adopted in order to carry on the war and are therefore justified under the powers of the United States in waging war, as has been decided in the case of United States v. Minery, in this district, in an opinion filed upon this day. 259 Fed. 707.

We must therefore determine what Congress meant by the use of the words "beer or other intoxicating malt liquor." In the first place, the word "malt" is evidently generic, and covers the entire scope of the law. In the same way the word "intoxicating" is generic, and covers the entire scope of the law; but this does not determine the question as to what articles Congress intended by the statute to prohibit as "intoxicating" and classified as such in the statute.

The doctrine of ejusdem generis is too well known and too well established to need elaboration. The case of United States v. Chase, 135 U. S. 255, 10 Sup. Ct. 756, 34 L. Ed. 117, and many decisions following this construction, have settled its meaning. In the District Court of the United States in the Southern District of New York in the case of Hoffmann Brewing Co. v. McElligott et al., 259

Fed. 321, decision was rendered May 17, 1919, on a motion to dismiss. This action was brought to enjoin the collector of internal revenue and the United States attorney, upon an allegation that these officials were intending after the 1st day of June, 1919, to prohibit the sale of beer containing more than one-half per cent. of alcohol by volume, and to prevent the brewing of such beer after the 1st day of May, 1919.

It was alleged that the collector was intending after those dates to refuse the sale of stamps or to allow brewers to qualify for conducting their business. The United States attorney, it was alleged, was intending to institute prosecution under the Agricultural Law—that is, the law of November 21, 1918—and to proceed with actions to impress forfeitures upon the properties used in the brewing of the products referred to, under the revenue law.

The court discussed principally the question of the jurisdiction of the court to proceed by injunction against the collector and the United States district attorney. The law was upheld as constitutional, the jurisdiction of the court to restrain the United States attorney and the collector was upheld, and the motion to dismiss denied, on the ground that the complaint alleged the beer in question to be nonintoxicating, that this was admitted by the motion, and that the law did not prohibit nonintoxicating beer.

The court assumed that the threatened action was based entirely upon the so-called Prohibition Law of November 21, 1918 (40 Stat. 1045, c. 212). Upon appeal this decision was reversed, in so far as the jurisdiction to enjoin the United States attorney from instituting prosecution was concerned, and this made unnecessary any determination as to what he might prosecute as a crime. The injunction against the collector of internal revenue was affirmed, inasmuch as the collector might see fit to attempt enforcement of forfeitures under the revenue law, because of violations of the so-called Prohibition Law, which was in no sense a revenue statute. 259 Fed. 525, —— C. C. A. ——.

In a dissenting opinion one member of the Court of Appeals expressed the opinion that the injunction against the collector should also be vacated, on the ground that, no wrongful act being intended or threatened, no need of an injunction was shown. It will be noted that inasmuch as the Court of Appeals, through all of its members, decided that no injunction against the United States attorney for the prosecution of cases under the so-called Prohibition Law could lie, there was obviously no need of determining what was the meaning or intent of this Prohibition Law. But the court, at the request of counsel and in order to facilitate proceedings in future cases, expressed their opinion as to the meaning of the phrase "no beer, wine, or other intoxicating, malt or vinous liquor."

This was stated as a dictum on the part of the court, but is useful in so far as it explains the idea of all of the members of the Court of Appeals who sat in that case. They seem to be in agreement with the idea of the judge in the District Court, when he stated that the question as to what was intoxicating liquor was a question of fact; they agree with him that the words "intoxicating, malt and vinous"

are general words, applying to the words "wine and beer," and must have been so understood by Congress. Hence these words were intended to mean wine and beer of the class of intoxicating liquor. But the court says:

"The courts cannot undertake to say as a matter of law that liquor which contains 2.75 per cent. of alcohol is not intoxicating."

This idea is plainly in accord with the statute. Congress had it in mind to say "beer or any other product of malt of an intoxicating nature." The thought was that expressed in the Selective Service Law (Act May 18, 1917, c. 15, 40 Stat. 76 [Comp. St. 1918, § 2019a]), which says: "Any intoxicating liquor, including beer, ale or wine." But either statement would suggest that Congress classified, and intended to classify, beer as intoxicating, and merely made sure that it was covered by the law in case dispute arose. The law surely included beer, and showed that Congress understood it to be intoxicating.

On July 1, 1919, in the case of United States of America v. Standard Brewery, in the district of Maryland, Judge Rose held that the words "beer and wine" apparently were intended to mean what they have always been supposed to mean, as in the class of intoxicating liquor. He says if any one makes or if any one sells that which a jury shall find to be intoxicating, he will be liable to the penalty, but, inasmuch as he understands that five judges of the Second circuit have expressed the opinion that the law had no relation to anything which was not intoxicating, he sustained a demurrer to an information which did not contain the word "intoxicating," in order that the case might go directly to the Supreme Court of the United States, rather than to proceed to a hearing on the merits.

It has been brought to the attention of the court that in the Western Pennsylvania[1] and in the Eastern Pennsylvania districts[2] demurrers have been overruled which had been presented upon the sole ground that the indictment or information did not contain the word "intoxicating." It has also been brought to the attention of the court that in a case in the district of Massachusetts[3] a demurrer has been sustained to a similar information, but whether this is following the reasoning of Judge Rose or is based upon different grounds is not known to this court.

From the above cases it is apparent that no court has held that Congress did not intend at the time of passing this law to prohibit lager beer with an amount of alcoholic content sufficient to make it taxable by the revenue department, sufficient to bring it within the general definition of lager beer, as known from past experience, and sufficient to bring the act within the prohibition of the Selective Service Law, which prohibited the sale of "any intoxicating liquors including wine and beer."

In other words, the statute intended to conserve food, to increase the man power of the nation, and to protect the organization of the army, by prohibiting the sale of beer which has a tendency to intox-

[1] United States v. Pittsburgh Brewing Co., 260 Fed. 762.
[2] United States v. Bergner & Engel Brewing Co., 260 Fed. 764.
[3] United States v. Petts, 260 Fed. 663.

icate to such an extent as to interfere with the morals, the physical welfare, or the good order of the community. Whether or not the mere sale of malt beer, even though it have not sufficient alcohol content to fully intoxicate, is of itself detrimental, whether the sale of such liquor (even though it would not fully intoxicate) is disadvantageous from the standpoint of the conservation of food, are things with which the court has nothing to do. That is a question for the calm discretion of Congress, and it is evident that Congress intended by the act under consideration to prohibit the sale of such beer as it considered detrimental.

The period during which this law can be enforced must be more or less brief. Even if it should continue until the Prohibition Amendment to the Constitution shall take effect, the period is not long. But Congress has the power at any time to modify the statute, and Congress has also the power to pass a law interpreting the statute, if beer which has a tendency to produce intoxication (in the sense of affecting control over the sensibilities, muscles, or emotions of an individual, but will not fully intoxicate) is not the substance intended to be prohibited.

If on a trial on the merits it shall appear that the lager beer in question is not of an intoxicating nature, and is not what Congress evidently meant to prohibit, the matter can be disposed of as a question of fact; but the court must instruct the jury as to the meaning of the statute. Such a question could not be, however, raised by admitting that the beer sold is a product of malt containing over one-half of 1 per cent. of alcohol, and by objecting that the information, while following the language of the statute and the thought of Congress, does not also charge that such substance is "intoxicating."

Under the law intending to prevent the use of narcotics, if a person were charged with the sale of opium, a demurrer would not lie on the ground that the person receiving the opium was so accustomed to the drug that it would not act as a narcotic. No acquittal of the charge of selling liquor could be directed in case the jury found that the person receiving the liquor would not be intoxicated thereby. The only defense would be that no person could receive any intoxicating effect therefrom, or in other words that it was not beer of the sort which Congress had in mind in using the word "beer," in the meaning of that word as used at the time of passage of the act—in other words, any kind of malt beer, which was in the legal sense an "intoxicating liquor," as Congress and public usage understood the term. It could never have been intended to leave to each jury the right to decide what it considered intoxicating liquor, and, on the contrary, it was not intended to leave to a jury the right to say what Congress meant.

Under the internal revenue laws and all standards by which Congress could have viewed the matter, the beer described in the present information was of the class known as intoxicating liquor, and as such its sale was prohibited.

The demurrer will be overruled, and the defendant required to plead over.